396 A.2d 1302

**COMMONWEALTH of Pennsylvania**

v.

**Raymond L. GORE, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 6, 1977.

Decided Dec. 29, 1978.

542

544

George E. Lepley, Jr., Assistant Public Defender, Williamsport, for appellant.

Robert F. Banks, First Assistant District Attorney, Greenville, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge:

Following a jury trial commenced on July 19, 1976, appellant was convicted of rape,[1] involuntary deviate sexual intercourse,[2] burglary,[3] robbery,[4] and theft.[5] Post-verdict motions were denied and appellant was sentenced to a prison term of from five to ten years. Appellant now contends that several reversible errors were made by the court below. We disagree and affirm the judgment of sentence.

Viewing the evidence in the light most favorable to the Commonwealth as verdict winner, *Commonwealth v. Burton*, 450 Pa. 532, 301 A.2d 599 (1973), the following facts were adduced at trial. On December 10, 1975, appellant knocked on the door of Frances Hibbler's apartment and inquired whether "Frances" or "Fran" resided therein. After Miss Hibbler identified herself as Fran, appellant placed his hand around the victim's mouth and forced her into the apartment. The assailant announced that this was a hold-up and threatened to kill Miss Hibbler if she screamed. Ordering her to remain on the bedroom floor, appellant examined the apartment, after which he blindfolded and gagged the victim as well as tying her hands. Momentarily removing the gag, appellant forced the victim to engage in an act of oral sex, followed immediately by insertion of his penis into her vagina. Appellant then took an amount of money from Miss Hibbler's purse and threatened to kill her if she related the

1. 18 Pa.C.S. § 3121.

2. 18 Pa.C.S. § 3123.

3. 18 Pa.C.S. § 3502.

4. 18 Pa.C.S. § 3701.

5. 18 Pa.C.S. § 3921.

incident to anyone. Following his departure, Miss Hibbler spoke with two roommates, her sister, and an attorney, after which she decided to report the incident to the police.

Appellant first contends that Officer Staje's testimony relating to the victim's description of her assailant was hearsay, and its admission reversible error. Specifically, during direct examination, Miss Hibbler pointed to appellant and identified him as the assailant. On redirect examination, she was asked to repeat the description of the perpetrator that she had given to the police approximately three hours after the incident. An objection was sustained to this testimony on the grounds of improper redirect examination. Subsequently, Officer Staje testified over a hearsay objection to the description of the attacker given by Miss Hibbler.

Appellee and the court below have advanced different theories in support of the testimony's admissibility. The former argues strenuously that the description was a prior identification and thus admissible as substantive evidence, citing *Commonwealth v. Saunders*, 386 Pa. 149, 125 A.2d 442 (1956), while the latter opined that the description constituted a prior consistent statement employable to rehabilitate Miss Hibbler, who had been impliedly accused of a recent fabrication, *see, e. g., Commonwealth v. Wilson*, 394 Pa. 588, 148 A.2d 234, *cert. denied*, 361 U.S. 844, 80 S.Ct. 97, 4 L.Ed.2d 82 (1959). We conclude that the testimony was properly admitted on the latter ground. In reaching this decision it is necessary to discuss certain recognized exceptions to the hearsay rule which might apply to the instant situation.

Initially, of course, Officer Staje's statement as to the victim's identification was hearsay under the generally accepted version of the rule, *i. e.* an out of court statement offered to prove the truth of the matter asserted. *See, e. g., Commonwealth v. Wright*, 455 Pa. 480, 317 A.2d 271 (1974); *see generally V Wigmore, Evidence,* § 1361 *et seq.* (Chadbourn rev. 1974). First, it is well established that a declaration, although hearsay, may be admissible if the declarant's statement was a spontaneous reaction to an occurrence

which is sufficiently startling so as to render the normal reflective thought processes of the observer inoperative. *Commonwealth v. Pronkoskie*, 477 Pa. 132, 383 A.2d 858 (1978); *Commonwealth v. Little*, 469 Pa. 83, 364 A.2d 915 (1976); *Commonwealth v. Cooley*, 465 Pa. 35, 348 A.2d 103 (1975); *Commonwealth v. McIntosh*, 258 Pa.Super. 101, 392 A.2d 704 (1978); *Commonwealth v. Dugan*, 252 Pa.Super. 377, 381 A.2d 967 (1977); *VI Wigmore, Evidence*, §§ 1745–1764 (Chadbourn rev. 1976). Our supreme court has characterized this exception to the general hearsay exclusionary rule as

> ". . . a spontaneous declaration by a person whose mind has been suddenly made subject to an overpowering emotion caused by some unexpected and shocking occurrence, which that person has just participated in or closely witnessed, and made in reference to some phase of that occurrence which he perceived, and this declaration must be made so near the occurrence both in time and place as to exclude the likelihood of its having emanated in whole or in part from his reflective faculties." *Commonwealth v. Coleman*, 458 Pa. 112, 115–16, 326 A.2d 387, 388–89 (1974) *quoting Allen v. Mack*, 345 Pa. 407, 410, 28 A.2d 783, 784 (1942).

The general principle is based on the experience that under certain circumstances of physical shock, the stress of nervous excitement stills the reflective facilities so that the utterance is a trustworthy statement, rather than one influenced by considerations of self-interest or extraneous pressure. *Commonwealth v. Coleman, supra ; Commonwealth v. Dugan, supra ; VI Wigmore, supra* at § 1747. The declaration need not be strictly contemporaneous with the existing cause, nor is there a definite and fixed time limit. *Commonwealth v. Noble*, 371 Pa. 138, 88 A.2d 760 (1952); *VI Wigmore, supra* at § 1750(b). Rather, each case must be judged on its own facts, and a lapse of time of several hours has not negated the characterization of a statement as an "excited utterance." *See Commonwealth v. Cheeks*, 423 Pa. 67, 223 A.2d 291 (1966) (forty-five minutes); *Commonwealth v. Du-*

*gan, supra* (2½–3 hours). The crucial question, regardless of the time lapse, is whether, at the time the statement is made, the nervous excitement continues to dominate while the reflective processes remain in abeyance. *VI Wigmore, supra* at § 1750(b).

■■ In the case *sub judice*, approximately three hours elapsed between the departure of appellant from the victim's apartment to the latter's recitation of the description in question. In the interim, Miss Hibbler discussed the advisable course of action with several individuals. The court below, citing *Commonwealth v. Little, supra,* (six hour lapse, intervening discussion), held that the combined effect of this time lapse and conversation was to strip the description of any pretense of being an "excited utterance." We agree. Although similar to *Commonwealth v. Dugan, supra,* in which we found an excited utterance exception, the instant factual situation differs in one crucial respect. In *Dugan,* an eighteen year old student was beaten and raped by the defendant who had offered her a ride in the early morning hours. Two hours after the rape, the defendant drove the victim to her home, where she immediately telephoned an artist friend who arrived shortly thereafter at her apartment. Pursuant to her description, he drew a pictorial representation of the assailant. At trial, the pictorial representation was admitted as substantive evidence along with testimony of the artist and the victim that it was indeed an accurate presentation. In condoning the use of the picture, we noted:

"Testimony as to the elapsed time [2½–3 hours] is not impugned, and *the victim testified to having done nothing between the time she returned home and the time the sketch was drawn* which might lead us to suspect that her statements of description of the appellant to [the artist] might be tainted by a lack of accuracy, specificity and spontaneity. We find that the victim's and [the artist's] evidence by way of the pictorial representation of appellant, bolstered by their oral testimony at trial, fulfills the requirements of the "res gestae" exception to what would

otherwise be hearsay." *Commonwealth v. Dugan, supra* 252 Pa.Super. at 382, 381 A.2d at 969. (Emphasis added).

Instantly, the time span is comparable to the three hours in *Dugan*, but Miss Hibbler has testified that she spoke with other persons, including an attorney friend, prior to giving description to Officer Staje. This interim conversation is precisely the type of "confusing force operating upon the recollection of the victim" that removes the spontaneity which is the *sine qua non* of the excited utterance. *Commonwealth v. Dugan, supra*, 252 Pa.Super. at 378, 381 A.2d at 969. *See also Commonwealth v. Dessus*, 214 Pa.Super. 347, 257 A.2d 867 (1969); *Commonwealth v. Nowalk*, 160 Pa.Super. 88, 50 A.2d 115 (1946). Thus, while Miss Hibbler may well have remained in a somewhat excited state for a time after the incident, her discussion with others, notably an attorney, does not allow us to preclude the possibility of deliberate design; although we of course do not imply any such fabrication. The law distrusts not after-speech but afterthought, *Travelers' Ins. Co. v. Shepard*, 85 Ga. 751, 775–76, 12 S.E. 18, 26 (1890), and Miss Hibbler's opportunity for such distorted afterthought is here too great to countenance the description's admission under this exception.

The lower court did, however, hold the testimony admissible because it corroborated the victim's identification of appellant in the face of the defense attorney's implied accusation of a recent fabrication. We agree with this reasoning.

■■ Generally, prior consistent statements of witnesses are not admissible as either substantive or corroborative evidence. *Commonwealth v. Bennett*, 471 Pa. 419, 370 A.2d 373 (1977); *Commonwealth v. Gaddy*, 468 Pa. 303, 362 A.2d 217 (1976); *Commonealth v. Carr*, 436 Pa. 124, 259 A.2d 165 (1969); *Commonwealth v. Whyatt*, 235 Pa.Super. 211, 340 A.2d 871 (1975); *but see* Fed.Rules Evid. Rule 801(d)(1). Were the rule otherwise, there would be considerable opportunity for the fabrication of testimony, and the relative credibility of witnesses might be premised on who had previously repeated his story more often. *See generally*, IV

*Wigmore, Evidence,* § 1112 *et seq.* (Chadbourn rev. 1972). Nevertheless, this court has noted that,

" '[t]here are certain well-recognized exceptions to this general rule: prior declarations of a witness, which are consistent with his present testimony, may be admissible to corroborate his present testimony if it be alleged that the witness' present testimony is recently fabricated, or if it be claimed that the witness is testifying from corrupt motives.' The prior declaration must have been made before its 'ultimate effect on the question trying could have been foreseen,' [citation omitted] or before the asserted corrupt motive existed [citation omitted]." *Commonwealth v. Whyatt, supra,* 235 Pa.Super. at 217, 340 A.2d at 875, *quoting Commonwealth v. Cooper,* 230 Pa.Super. 204, 207, 327 A.2d 177, 179 (1974).

The admission of such consonant statements is a matter to be decided by the trial judge in the exercise of his discretion in light of the character and degree of impeachment. *Commonwealth v. Marino,* 213 Pa.Super. 88, 245 A.2d 868 (1958). It is not necessary that the impeachment be explicit, *i. e.,* that an actual allegation of recent fabrication be made, but only that a jury be able to reasonably infer that such is occurring. *See, e. g., Commonwealth v. Gaddy, supra,* 468 Pa. at 315, 362 A.2d at 223 (defense counsel had "sought to convey the impression" that a witness testified to obtain favorable treatment for himself); *Keefer v. Byers,* 398 Pa. 447, 450, 159 A.2d 477, 478 (1960) (questioning "strongly suggested" that testimony was a recent fabrication). Nevertheless, this testimony, if admissible, is admissible

"only in rebuttal and then only for the purpose of showing that that which the witness now testifies to has not been recently fabricated and not for the purpose of proving the truth of the present testimony." *Commonwealth v. Wilson, supra* 394 Pa. at 603, 148 A.2d at 242.

*See also Commonwealth v. Gaddy, supra,* and cases cited therein.

In the instant case, the following exchange took place between appellant's counsel and Miss Hibbler:

"Q. Now could you see through the blindfold?

A. No I could not.

A. Now, prior to this incident, you had said you saw Mr. Gore [appellant] in August, in late August of 1975?

A. Yes.

Q. And this was the grocery incident where he brought groceries to your house, helped you carry those groceries?

A. Yes.

Q. And at that time you said after he had come into your house, something to the affect that you hoped he was not the kind of person who would rape you, is that true?

A. Yes.

Q. Now did you detect any odor on the person?

A. None other than a strong smell of some perfume or whatever."

N.T. 47

The lower court believed that the above questioning implied that Miss Hibbler was now accusing appellant because of his prior involvement carrying her groceries, *i. e.,* appellant provided a convenient and identifiable attacker. Although this was not made explicit, the jury could infer it from the questioning and the forthcoming alibi defense; a defense which appellant's counsel had referred to in his opening comments.

While it is a close question as to whether there was indeed a reasonable inference of a recent fabrication, *cf., e. g., Commonwealth v. Gaddy, supra,* we find that the trial judge did not abuse his discretion in admitting the description. Nevertheless, as noted in *Commonwealth v. Wilson, supra,* such a prior statement may be used only to rebut the inference of fabrication, and the jury should be cautioned to receive the information for this limited purpose rather than as substantive evidence. *Commonwealth v. Gaddy, supra,* 468 Pa. at 317, 362 A.2d at 223; *Commonwealth v. Wilson, supra,* 394 Pa. at 603–04, 148 A.2d at 242;

*Risbon v. Cottom,* 387 Pa. 155, 163, 127 A.2d 101, 105 (1956); *Lyke v. Lehigh Valley Railroad Co.,* 236 Pa. 38, 51, 84 A. 595, 599 (1912). No such instructions were given in the instant case. However, the record indicates that they were neither requested nor was any comment made when the court, at the conclusion of the charge, asked counsel if anything need be added. We addressed this same situation in *Risbon v. Cottom, supra.* In *Risbon,* the plaintiff testified in chief that the defendant had driven his car across the center line of the highway and crashed into the former's car. The defendant noted that earlier, the plaintiff had stated that he could not remember the incident. Over defendant's objection, plaintiff was allowed to call a police officer who testified that plaintiff gave an identical description following the accident. As here, no instruction was given as to this testimony's limited use. Nevertheless, we upheld its introduction and noted:

> "Not only did counsel for appellant make no response to the trial judge's repeated inquiry but, in subsequently excepting to the charge, he failed to call to the court's attention that it had not explained to the jury the scope and purpose of the State policeman's testimony in rebuttal embracing [the plaintiff's] prior consonant statement." *Risbon v. Cottom, supra,* 387 Pa. at 164, 127 A.2d at 105. *Accord, Keefer v. Byers, supra.*

Although counsel in *Risbon* also failed to assign the error in post-verdict motions as a basis for a new trial, the fact that the error was here so assigned does not resurrect an issue previously waived. *See, e. g., Commonwealth v. Colbert,* 476 Pa. 531, 383 A.2d 490 (1978); *Commonwealth v. Brown,* 467 Pa. 512, 359 A.2d 393 (1976); *Commonwealth v. Easley,* 245 Pa.Super. 41, 369 A.2d 283 (1976). If counsel wishes to preserve an issue for appellate review he must bring the alleged error to the attention of the trial court at the time of the charge.

Although the evidence was properly admitted for the above reason, we may briefly discuss the argument advanced by appellee for its introduction. Appellee urges

that a prior description is admissible as *substantive* evidence regardless of any attempted impeachment. It is true that a witness may testify to the fact that he made a prior out of court identification, at a lineup or photographic array for example, and have this admitted as substantive evidence. *See, e. g., Commonwealth v. Hall,* 456 Pa. 243, 317 A.2d 891 (1974); *Commonwealth v. Saunders,* 386 Pa. 149, 125 A.2d 442 (1956); *Commonwealth v. Jones,* 231 Pa.Super. 323, 331 A.2d 788 (1974). As *Saunders* notes, however, in this line of cases,

> "[i]t must be borne in mind that we are dealing here, not with the hearsay testimony of witnesses who merely heard such identifications being made, *but with testimony given by those who themselves made the identifications at the line-up.*" *Commonwealth v. Saunders, supra* 386 Pa. at 155, 125 A.2d at 445. (Emphasis added).

This rule limits testimony on prior identifications solely to those who had made the original identification. Appellee, however, would have us extend this concept not only to the testimony of third parties, but to matters of description as well as identification. *Commonwealth v. Hill,* 237 Pa.Super. 543, 353 A.2d 870 (1975), on which appellee bases his argument arguably supports the former contention but not the latter. In *Hill,* the victim of a robbery testified at trial that while he was in the hospital, he could not identify both appellants as the robbers. The detective who presented the appellants to the complainant however, testified that an identification had indeed been made. Objection was made and sustained that this was hearsay, and an adequate curative instruction was given. This court held that the instruction was sufficient to cure the erroneous reception of evidence, but, in dictum, noted that the statement was in fact not hearsay and that a "special case should be recognized where the prior statement is one of identification." *Commonwealth v. Hill, supra,* 237 Pa.Super. at 554, 353 A.2d at 877.

Significantly, however, we supported this decision by referring to *McCormick*:

"Justification is found in the unsatisfactory nature of court room identification and the safeguards which now surround staged out-of-court identifications. *McCormick, supra* at 603." *Commonwealth v. Hill, supra,* 237 Pa.Super. at 555, 353 A.2d at 878.

This indicates that there is a distinction between a personal identification of appellant by lineup or photograph and *any* other statement. If descriptions were allowed, there would appear no logical reason to refuse *any* prior consistent statement, in which case the rule would be swallowed by its exception. It is, at any rate, a dilemma we need not at the moment resolve.

Appellant next contends that there was error in overruling an objection to the introduction of a newspaper clipping which implied that appellant had been previously arrested. The following facts are pertinent to this issue. Subsequent to the sexual attack on the victim, appellant produced a folded newspaper clipping from his pocket, displayed it, and said, "So you see that, that is me." N.T. 36. He immediately replaced the clipping in his pocket, and the only words on the paper discernable to Miss Hibbler were "Arrested for armed robbery." The display was apparently an attempt to substantiate his threat to kill Miss Hibbler were she to discuss the incident with anyone.

Following Miss Hibbler's testimony to that effect, Officer Staje testified as follows:

"Q. Agent Staje, the clipping that the Defendant had when you took him into custody that you removed from him, do you recall whether or not that had a headline?

A. Yes it did.

Q. And were the words used in that headline similar to the words that [sic] "arrested for armed robbery"?

A. Yes they were."

N.T. 58.

Immediately after this information was elicited, the trial judge recited the following instruction:

"Members of the Jury, you have heard testimony from the previous witness, Miss Hibbler, and the testimony just now from this witness, concerning a clipping, and you have heard each witness use the terms which according to the Court's recollection were similiar [sic] in describing the words recalled from the clipping, and both witnesses designated that clipping having been in the possession of the Defendant. Now the credibility of course, of all of this is for you, but the only purpose for which you may consider that clipping or any evidence concerning that clipping is not as to what the clipping may have said or any other matter concerning it, and certainly you shall draw no inference from the clipping with reference to any incident in which the Defendant was or was not involved, that was not relevant or connected with the matter that is on trial here. The only purpose of the clipping only [sic] as far as the theory of the Commonwealth case is concerned is to produce the evidence the Commonwealth evidence with reference to the assertion that the Defendant was at Miss Hibbler's apartment on December 10, 1975. Whether it is evidence of that or corroborative of Miss Hibbler whether it is circumstances [sic] which tends to prove that the Defendant was present it is for you to determine, but you are to use it for no other purpose, that is no other inference concerning the Defendant's past or any other incident in connection with it. Thank you."
N.T. 58–9.

■ In general, admission of testimony which details, or from which the jury may reasonably infer, past criminal conduct on the part of a defendant constitutes reversible error. *Commonwealth v. Martin,* 479 Pa. 63, 387 A.2d 835 (1978); *Commonwealth v. Adams,* 476 Pa. 91, 381 A.2d 882 (1977); *Commonwealth v. Wright,* 259 Pa.Super. 293, 393 A.2d 833 (1978); *Commonwealth v. DeCampli,* 243 Pa.Super. 69, 364 A.2d 454 (1976). We previously noted that:

"The purpose of this rule is to prevent the conviction of an accused for one crime by the use of evidence that he has committed other unrelated crimes, and to preclude the

inference that because he has committed other crimes he was more liable to commit that crime for which he is being tried. The presumed effect of such evidence is to predispose the minds of the jurors to believe the accused guilty, and thus effectually to strip him of the presumption of innocence." *Commonwealth v. Trowery,* 211 Pa. Super. 171, 173–74, 235 A.2d 171, 172 (1967).

*See also Commonwealth v. Wright, supra; Commonwealth v. Elmore,* 241 Pa.Super. 470, 362 A.2d 348 (1976).

██ Nevertheless, such testimony may be admissible in certain special circumstances, when it is not offered to demonstrate a criminal propensity, but to evidence motive, intent, absence of mistake, a common scheme, or the identity of the person charged with the crime. *See, e. g., Commonwealth v. Roman,* 465 Pa. 515, 351 A.2d 214 (1976); *Commonwealth v. Wright, supra; Commonwealth v. Bradley,* 243 Pa.Super. 208, 364 A.2d 944 (1976). Even if an exception applies, however, the need for the evidence must be balanced against its potential prejudice in order to determine its admissibility. *Commonwealth v. Wright, supra; Commonwealth v. Bradley, supra.*

██ In the instant case, it is clear that when Officer Staje testified that appellant carried a clipping on his person similar to the one displayed to Miss Hibbler, appellant's identity tended to be established. As noted by the court below, it would be highly unlikely that two different persons would have the identical clipping in their possession. Such linkage was thus highly probative in corroborating Miss Hibbler's positive identification of appellant, and constituted a source independent of any conceivable error committed by the witness in recognizing facial and other physical characteristics. The value of the evidence clearly outweighs any possible prejudicial effect. *See Commonwealth v. Wright, supra,* (Price, J., dissenting).

Our conclusion is re-enforced by the careful cautionary instruction given to the jury by the lower court immediately following presentation of the testimony. The trial judge strongly admonished the jury to use the information for the

single purpose of establishing appellant's identity as that person present in the victim's apartment. It was, moreover, specifically noted that the jury was *not* to employ the information to form any inferences with respect to appellant's past conduct. While it has been argued that such cautionary instructions require the jury to engage in "mental gymnastics", and may be ineffective in mitigating prejudicial impact, *see, e. g., Commonwealth v. Roots,* 482 Pa. 33, 393 A.2d 364 (1978), we are convinced that the testimony was narrowly circumscribed by the instruction so as to reflect solely on the issue of identity.

 Nonetheless, even if testimony of the clipping *qua* clipping were admissible, appellant argues that it was neither necessary nor proper to reveal its content. Yet, it is difficult to see how the clipping could have been employed without reference to its visible headline. Obviously, the fact that Miss Hibbler's assailant and appellant both carried folded newspaper clippings is hardly probative of anything without more information. Quite properly, the bare minimum of words required to establish the nature of the clipping was revealed, while the substance of the article was not examined nor was it introduced into evidence.[6] We cannot say that the introduction of this testimony in any way deprived appellant of a fair trial.

 Finally, appellant contends that he should have been allowed individual voir dire because "[o]ne cannot adequately develop the feelings of jurors when a large panel is asked questions." Brief for Appellant 15. Such a claim is frivolous. Pa.R.Crim.P. 1106(e) specifically leaves to the discretion of the trial judge the particular form of voir dire to be conducted in non-capital cases. *See also Commonwealth v. Howard,* 248 Pa.Super. 246, 375 A.2d 79 (1977); *Commonwealth v. Herron,* 243 Pa.Super. 319, 365 A.2d 871 (1976). We agree with the trial judge that this case present-

6. Appellant's attempt to analogize this case to those involving mug shots is fruitless. Those cases cited by appellant, *e. g., Commonwealth v. Allen,* 448 Pa. 177, 292 A.2d 373 (1972), all recognize the exception to the general exclusionary rule above noted.

ed no problem involving severe racial or religious overtones, nor was there inflammatory pre-trial publicity which necessitated intensive individual examination of prospective jurors. Appellant candidly admits that it is difficult to show prejudice objectively in these situations, but nevertheless contends that a black male being tried for a sex offense by a predominately white panel is apparently *prima facie* prejudicial. We cannot agree.

The judgment of sentence is therefore affirmed.

SPAETH, J., concurs in the result.

WATKINS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.