**Chauncey M. BOYKIN, Appellant,**

v.

**Donnell D. BROWN, Appellee.**

Superior Court of Pennsylvania.

Argued Dec. 8, 2004.

Filed Feb. 15, 2005.

Bradley K. Enterline, Erie, for appellant.

BEFORE: HUDOCK, MUSMANNO and TAMILIA, JJ.

OPINION BY MUSMANNO, J.:

¶ 1 Chauncey M. Boykin ("Boykin") appeals from the Order dismissing her Petition for a protection from abuse ("PFA") order. We vacate the Order and remand for further proceedings.

¶ 2 On January 4, 2004, Boykin went to the home of Donnell D. Brown ("Brown") to pick up Boykin's and Brown's son, who was visiting with Brown. Boykin's daughter was with Boykin, and another son of Brown's was present inside the house. According to Boykin, Brown indicated that he would not permit Boykin to leave the house until she had sex with him. Boykin told Brown that she did not wish to have sex with him. After a period of time, Boykin attempted to leave, with her daughter and son, but Brown kept "touching" her and "trying to grab" her. Brown attempted to kiss Boykin and tried to lift up her dress, while Boykin tried to get away from Brown. Brown continued to push Boykin toward the bed while Boykin tried to push Brown away. Eventually,

Brown pushed Boykin down on the bed and raped her. Afterwards, Boykin felt "shocked," and took her children to the car and left. *See* N.T., 2/12/04, at 3–14.

¶3 On February 5, 2004, Boykin filed a Petition for a PFA order against Brown, and the PFA court granted a temporary PFA Order. On February 12, 2004, the PFA court conducted a hearing, at which Boykin and Brown testified. Brown testified that Boykin spent five hours at his house that day, and that they had consensual sex "for twenty some odd seconds." *Id.* at 18–19. Brown denied that he forced Boykin to have sex with him. *Id.* at 20.

¶4 After the parties testified, the PFA judge stated that he was going to withhold his decision until the police decided whether to file criminal charges against Brown based on the incident of January 4, 2004. *Id.* at 21. The PFA judge indicated that he would grant the PFA Petition if the police filed criminal charges against Brown based upon that incident, but would deny the PFA Petition if the police did not file charges. *Id.*

¶5 At a second PFA hearing on April 6, 2004, a representative from the District Attorney's office, Chad Vilushis, testified that his office had decided "not to go forward with the charges" against Brown. N.T., 4/6/04, at 3–4. Counsel for Boykin argued that a successful PFA Petition "need not rise to the level of criminal acts." *Id.* at 4–5. The PFA court dismissed Boykin's PFA Petition, stating that the court did not find "substantial evidence" from Boykin's testimony at the prior hearing, and did not find Boykin's testimony from that hearing to be credible. *Id.* at 5. Boykin filed the instant timely appeal from the dismissal of her PFA Petition, in which she raises the following issues:

1. Did the PFA court abuse its discretion or commit an error of law where the PFA court based its decision on Boykin's PFA Petition on whether or not the police filed rape charges against Brown?

2. Did the PFA court err and/or abuse its discretion in refusing to allow two of Boykin's witnesses to testify on behalf of Boykin?

3. Did Boykin waive her objection to the PFA court's decision to dismiss the PFA if no criminal charges were filed?

*See* Brief of Appellant at 4.

¶6 Boykin first contends that the PFA court abused its discretion and committed an error of law by basing its ruling on the PFA Petition on whether the police filed rape charges against Brown. Boykin asserts that the PFA court's decision to defer ruling on the PFA Petition until the police had completed their investigation of the charges against Brown in essence placed a burden upon her to prove not only abuse as defined in the PFA Act, but to convince the police to prosecute Brown on criminal charges. Boykin contends that such a burden of proof exceeds the burden of proof required by the PFA Act. *See* Brief of Appellant at 15.[1]

¶7 Pursuant to the PFA Act, 23 Pa. C.S.A. §§ 6101–6117, a PFA petitioner "must prove the allegation of abuse by a preponderance of the evidence." 23 Pa. C.S.A. § 6107(a); *Snyder v. Snyder*, 427 Pa.Super. 494, 629 A.2d 977, 982–83 (1993).

¶8 In the instant case, rather than applying the preponderance of the evidence standard to Boykin's PFA Petition, the PFA court deferred its decision to the District Attorney's office, and indicated that it would base its PFA ruling on the

1. Boykin contends in her third issue on appeal that she did not waive her first issue on appeal. We agree. The record indicates that

Boykin presented this issue to the trial court at the April 6, 2004 PFA hearing. *See* N.T., 4/6/04, at 4–5.

District Attorney's decision as to whether to prosecute Brown on criminal charges. By allowing the PFA decision to be determined, in effect, by the District Attorney's office, the PFA court permitted the decision to be made based on a standard of criminal culpability. This clearly was error.

¶ 9 As this Court stated in *Snyder*, "the Protection from Abuse Act does not seek to determine criminal culpability." *Snyder*, 629 A.2d at 982–83; *see also Miller on Behalf of Walker v. Walker*, 445 Pa.Super. 537, 665 A.2d 1252, 1257 (1995) (stating that appellant's argument in a PFA proceeding that his conduct did not rise to the level of criminal culpability did not defeat the trial court's PFA order). The Court in *Snyder* further held that "[a][PFA] Petitioner is not required to establish [that] abuse occurred beyond a reasonable doubt, but only to establish it by a preponderance of the evidence." *Id.* (citing 23 Pa.C.S.A. § 6107(a)). Thus, a determination by a District Attorney or the police as to whether to file criminal charges against a defendant in a PFA proceeding is not relevant to the PFA court's decision. Accordingly, because the PFA court did not use the proper standard in evaluating the evidence in regard to Boykin's PFA Petition, we vacate the PFA court's Order and remand for a new hearing in which the trial court must consider Boykin's Petition using the preponderance of the evidence standard set forth in section 6107(a).

¶ 10 Boykin also contends on appeal that the PFA court erred or abused its discretion by precluding two of Boykin's witnesses from testifying on Boykin's behalf. Boykin asserts that the PFA court should have allowed the testimony of two persons whom Boykin telephoned after she returned home from Brown's house on the day of the incident. Boykin claims that such testimony would have been admissible as "excited utterances" pursuant to Rule 803(2) of the Pennsylvania Rules of Evidence.

¶ 11 "Questions concerning the admission or exclusion of evidence are within the sound discretion of the trial court and may be reversed on appeal only when a clear abuse of discretion was present." *Miller on Behalf of Walker*, 665 A.2d at 1259.

¶ 12 An excited utterance of a declarant is an exception to the hearsay rule. Pa. R.E. 803(2). The Pennsylvania Rules of Evidence define an excited utterance as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." *Id.*

> The declaration need not be strictly contemporaneous with the existing cause, nor is there a definite and fixed time limit .... Rather, each case must be judged on its own facts .... The crucial question, regardless of the time lapse, is whether, at the time the statement is made, the nervous excitement continues to dominate while the reflective processes remain in abeyance.

Comment, Pa.R.E. 803(2) (quoting *Commonwealth v. Gore*, 262 Pa.Super. 540, 396 A.2d 1302, 1305 (1978)).

¶ 13 In the instant case, Boykin testified that after the incident with Brown, she returned home and called her mother, her friend Deana Brown, and her family, and told them what had occurred with Brown. N.T., 2/12/04, at 14. Boykin further testified that she felt "shocked" after the alleged attack by Brown. *Id.* These circumstances may have supported application of the excited utterance rule, as it appears that the proposed testimony would have consisted of statements Boykin made relating to a "startling event," at a time when Boykin was "under the stress of excitement caused by the event."

See Comment, Pa.R.E. 803(2).[2] However, at the PFA hearing, Boykin did not raise this theory to support her proffer of the testimony. N.T., 2/12/04, at 16–18. Thus, she did not properly preserve this argument for appeal. See Pa.R.A.P. 302(a) (stating that an issue may not be raised for the first time on appeal). However, Boykin may raise this issue at the new hearing which we have ordered by this Opinion.

¶ 14 Order vacated; case remanded for a new hearing in accordance with this Opinion.

2. Cf. Gore, 396 A.2d at 1306 (holding that, where three hours had elapsed after the departure of the defendant from the rape victim's apartment, and the rape victim had discussed the advisable course of action with several persons, including an attorney friend, the victim's statements to police officers were not admissible as "excited utterances").