J-S07002-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| M.L.T. ON BEHALF OF A.L.T., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| E.J.S., | |
| Appellant | No. 1137 MDA 2014 |

Appeal from the Order Entered June 11, 2014
In the Court of Common Pleas of Schuylkill County
Civil Division at No(s): A-161-2014

BEFORE:  BENDER, P.J.E., OLSON, J., and OTT, J.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED MARCH 04, 2015**

E.J.S. (Mother) appeals from a final protection from abuse (PFA) order, entered against her on June 11, 2014, on behalf of her minor daughter, A.L.T., for a period of one year.  After careful review, we are compelled to vacate that order.

The PFA court set forth the facts and procedural history of this case as follows:

> On May 30, 2014, Father [M.L.T.] filed a Petition for Protection from Abuse ("PFA") with this [c]ourt against Mother, alleging that while their daughter, [A.L.T.], was in Mother's custody and care, [A.L.T.] was touched inappropriately.  Another member of this [c]ourt entered an *ex parte* temporary PFA order.  On June 11, 2014, we held a full evidentiary hearing. Both parties were represented by counsel.
>
> Father testified that he lives in Minersville, Pennsylvania[,] with [A.L.T.], Father's girlfriend Danielle Moe, their son [B.], and Danielle's twin brother Damian Hadlock.  The parties follow a custody order for [A.L.T.].  On the Sunday in May, 2014[,] prior

to Memorial Day, Father and [A.L.T.] were sitting in the living room. [A.L.T.] was leaning on a table and Father asked her to sit back, because she almost spilled a drink. Over Mother's counsel's objection, we allowed Father to testify that [A.L.T.] told him her "hooha" hurt because someone had touched it. At first, [A.L.T.] would not tell Father who touched her, so Father took her into her bedroom and asked her privately. [A.L.T.] told Father that her "Uncle Phil" did it.

Father identified "Uncle Phil" as being Mother's brother, Phillip. Father asked [A.L.T.] when this happened, and whether [A.L.T.] told Mother about it. Father then called Mother, and reported what [A.L.T.] had said. Mother allegedly told Father to calm down, and that she "would handle it." Father then called the police. As a result of that conversation, Father took [A.L.T.] to the hospital emergency room. Father testified that [A.L.T.] was examined and hospital staff told Father that [A.L.T.'s] hymen was torn.

Mother's counsel provided a copy of the emergency room doctor's report.[1] It was marked as Plaintiff's Exhibit 1. We admitted the unauthenticated report into the record for the purpose of showing that [A.L.T.] had been examined at the hospital. The alleged assault was reported to the Schuylkill County Children & Youth agency. Father also reported the incident to the Upper Gwynned police department. The Montgomery County Children & Youth agency was also notified.

…

Father is concerned for [A.L.T.'s] safety because [A.L.T.] told him she told Mother about [being touched], and Mother did not do anything about it. This testimony was also admitted despite Mother's counsel's objection.

On cross[-]examination, Father admitted that he had [A.L.T.] for the entire weekend. On Friday night, he had taken [A.L.T.] to Dorney Park … and they went on rides. Father was asked by defense counsel what [A.L.T.] had said to Father that

_____

[1] Mother's counsel provided a copy of the medical report "as a courtesy," but Father's counsel moved for the admission of the report into evidence. N.T., 6/11/14, at 7.

Sunday. Father said [A.L.T.] told him it hurt when she peed, and that she couldn't sit because it hurt. Father stated that in the past, [A.L.T.] had had multiple urinary tract infections …. Father testified that when he took [A.L.T.] for treatment, the hospital suggested that one of the possible causes of urinary tract infection could be sexual assault and suggested Father contact Children & Youth.

We found Father's testimony to be credible. Next, Mother testified. She now lives with her parents and brother in North Wales, Montgomery County, Pennsylvania. On Friday, May 23, 2014, she brought [A.L.T.] to the Pennsylvania Turnpike Allentown Service Plaza for the parties' routine custody exchange. Mother state[d] that [A.L.T.] did not say anything to Mother about any pain to her "hooha." Earlier that same day, Mother and her boyfriend, Bruce, took [A.L.T.] to Peace Valley Park, where they played at a playground, had a picnic and walked around a lake. [A.L.T.] sat on both Mother's and Bruce's shoulders without incident. Mother did not see [A.L.T.] having any difficulty sitting.

Mother, her parents, her brother Phillip and [A.L.T.] all have their own bedrooms in the home where Mother resides. "Uncle Phil" works and usually arises for work around 2:00[]PM each day. [A.L.T.] did not tell Mother of any problems with "Uncle Phil." Mother does the laundry for herself and [A.L.T.], and did not see any blood on [A.L.T.'s] laundry, underwear or bed sheets. Mother states that if she had seen anything like that, she would have taken action.

Mother state[d] that when Father called her to tell her what he had learned from [A.L.T.], Father told Mother he questioned [A.L.T.] for 30-45 minutes before [A.L.T.] told him what happened. Mother believes Father might have "scared" [A.L.T.] when he talked with her about what happened. Mother report[ed] that she is cooperating with Montgomery County Children & Youth, but had not yet spoken to Schuylkill County's agency.

On cross[-]examination, Mother testified that Phil still lives with her, and that he was not present to testify. Mother stated that although she was "very shocked" to hear the allegation, [A.L.T.] and Phil are very close, and sometimes they play games where [A.L.T.] blames Phil for "a lot of things." The police told Mother that [A.L.T.] is no longer allowed to go to Mother's

house. Mother testified that if [A.L.T.] is permitted by this [c]ourt to return to Mother's [home], either Phil will move out or Mother will move out.

During counsels' closing arguments, Mother's counsel argued that there was no evidence of a sexual assault, only hearsay testimony by a four year old girl. Rather, Mother believes that Father made this story up because Father no longer wishes to pay child support, and the parties do not get along and this is just part of a custody battle between them.

We disagreed and entered the permanent PFA order at the conclusion of the hearing. We ordered that Mother would continue to have visitation with[, and partial custody of,] [A.L.T.], but that it had to be exercised within Schuylkill County. [The order also directed that A.L.T. have no contact with her maternal uncle.] Mother's counsel asked to consider modifying that custody [determination] in the event Mother obtained her own residence, and that "Uncle Phil" would not have any contact with [A.L.T.]. We denied the request at that time because the investigation was not yet complete, and the parties had an ongoing companion custody proceeding.

On June 16, 2014, Mother filed a Motion for Reconsideration, and on June 18, 2014, [she] filed an Amended Motion for Reconsideration attaching a missing Exhibit. We did not rule on Mother's motions. On July 9, 2014, Mother filed this appeal.

PFA Court Opinion (PCO), 8/18/14, at 1-5 (unnumbered).

Mother filed a timely, court-ordered concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Herein, she raises the following five issues for our review, which we have reordered for ease of disposition:

I. Can hearsay evidence of a minor under age 12 be admitted without an *in camera* hearing or without a declaration of unavailability?

II. Was the Plaintiff's burden of proof met?

- 4 -

III. Can hearsay evidence of a minor under age 12 be admitted if there is no notice to [the] opposing party, of intentions to use such [evidence]?

IV. Can an unauthenticated medical report be used for the truth of the matter asserted when said report was not submitted for its contents?

V. Under what circumstances can an individual be named a defendant to a protection from abuse petition?

Mother's Brief at 5.

Initially, we note that "[i]n the context of a [PFA] order, we review the trial court's legal conclusions for an error of law or abuse of discretion." **Commonwealth v. Walsh**, 36 A.3d 613, 617 (Pa. Super. 2012) (quoting **Stamus v. Dutcavich**, 938 A.2d 1098, 1100 (Pa. Super. 2007) (citation omitted)).

First, Mother argues that the PFA court erred by permitting Father to testify about the out-of-court statements A.L.T. made to Father regarding "Uncle Phil's" touching her. At the PFA hearing, Mother's counsel repeatedly objected to Father's testimony, claiming that it constituted hearsay. N.T., 6/11/14, at 5, 6, 12. The court overruled those objections without explanation. **Id.** On appeal, Mother contends that the court erred by admitting A.L.T.'s hearsay statements without satisfying the dictates of 42 Pa.C.S. § 5985.1, which states, in pertinent part:

**(a) General rule.--**An out-of-court statement made by a child victim or witness, who at the time the statement was made was 12 years of age or younger, describing any of the offenses enumerated in 18 Pa.C.S. Chs. 25 (relating to criminal homicide), 27 (relating to assault), 29 (relating to kidnapping), 31 (relating to sexual offenses), 35 (relating to burglary and other criminal intrusion) and 37 (relating to robbery), not

- 5 -

otherwise admissible by statute or rule of evidence, is admissible in evidence in any criminal or civil proceeding if:

> (1) the court finds, in an in camera hearing, that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

> (2) the child either:

>> (i) testifies at the proceeding; or

>> (ii) is unavailable as a witness.

> **(a.1) Emotional distress.--**In order to make a finding under subsection (a)(2) (ii) that the child is unavailable as a witness, the court must determine, based on evidence presented to it, that testimony by the child as a witness will result in the child suffering serious emotional distress that would substantially impair the child's ability to reasonably communicate. In making this determination, the court may do all of the following:

>> (1) Observe and question the child, either inside or outside the courtroom.

>> (2) Hear testimony of a parent or custodian or any other person, such as a person who has dealt with the child in a medical or therapeutic setting.

42 Pa.C.S. § 5985.1(a), (a.1).

Here, the PFA court did not conduct an *in camera* hearing. The court also ruled that A.L.T. was 'unavailable' because "the child was not present at the hearing[] [and] neither party sought to present the child's testimony." PFO at 9 (unnumbered). The court did not base its determination of unavailability on A.L.T.'s "suffering serious emotional distress that would substantially impair the child's ability to reasonably communicate." 42 Pa.C.S.A. § 5985.1(a.1). At no point did the court observe A.L.T. or hear any testimony regarding the impact that testifying might have on A.L.T.

- 6 -

Under these circumstances, we are compelled to agree with Mother that the court improperly admitted the hearsay testimony regarding A.L.T.'s statements to Father.

While "it is well-settled that not every legal mishap prejudices a defendant to the extent that reversal is necessary[,]" we are unable to conclude that the PFA Court's error was harmless in this case. ***Commonwealth v. Rickabaugh***, 706 A.2d 826, 838 (Pa. Super. 1997) (citation omitted). For the reasons that follow, we are constrained to conclude that without A.L.T.'s hearsay statements, the evidence was insufficient to support the entry of a PFA order against Mother.

We begin by setting forth the PFA court's rationale for determining that a final PFA order against Mother was warranted:

> The Protection From Abuse Act ("PFA Act") is codified at 23 Pa.C.S. §§ 6101 *et seq.* "Abuse" is defined therein as "[t]he occurrence of one or more of the following acts between family or household members," including "[p]hysically or sexually abusing minor children, including such terms as defined in Chapter 63 (relating to child protective services)." 23 Pa.C.S. § 6102. Under the Child Protective Services Act, 23 Pa.C.S. §§ 6301 *et seq.*, "[c]hild abuse" is defined as [a]ny recent act *or failure to act* by a perpetrator which causes … sexual abuse … of a child under 18 years of age." 23 Pa.C.S. § 6303 (emphasis added). It also includes "[a]ny recent act, *failure to act*, or series of such acts or failures to act by a perpetrator which creates an imminent risk of … sexual abuse … of a child under 18 years of age." ***Id.*** (emphasis added). The PFA Act's definition of abuse is considered broader than the definition found in the Child Protective Services Law. ***Velasquez v. Cancel***, 727 A.2d 591, 595 (Pa. Super. 1999).
>
> "The purpose of the PFA Act is to protect victims of domestic violence from those who perpetrate such abuse, with

the primary goal of advance prevention of physical and sexual abuse." ***Buchhalter v. Buchhalter***, 959 A.2d 1260, 1262 (Pa. Super. 2008) (further citation omitted). "The intent of the remedies under the Act is to allow persons to reside peaceably and without injury within their families and/or residences." ***Scott v. Shay***, 928 A.2d 312, 314 (Pa. Super. 2007). The PFA Act temporarily suspends the due process rights of an alleged abuser and enables a court to "[r]esort … to extraordinary measures when necessary to ensure that orders designed to provide protection actually do so." ***Commonwealth v. Padilla***, 885 A.2d 994, 997 (Pa. Super. 2005).

A parent may seek relief under the PFA Act on behalf of minor children. 23 Pa.C.S. § 6106(a). "The court may grant any protection order … to bring about a cessation of abuse of the … minor child[.]" 23 Pa.C.S. § 6108(a). This relief may include "[a]warding temporary custody of or establishing temporary visitation rights with regard to minor children." 23 Pa.C.S. § 6108(a)(4). In making that determination, the following shall apply:

> (i) A defendant shall not be granted custody, partial custody or unsupervised visitation where it is alleged in the petition, and the court finds after a hearing under this chapter, that the defendant:
>
>> (A) abused the minor children of the parties or *poses a risk of abuse toward the minor children of the parties[.]*
>>
>> …
>
> (iii) Where the court finds after a hearing under this chapter that the defendant has inflicted serious abuse upon the plaintiff or a child or *poses a risk of abuse toward the … child*, the court may:
>
>> (A) award supervised visitation in a secure visitation facility; or
>>
>> (B) deny the defendant custodial access to a child.

23 Pa.C.S. § 6108(a)(4) (in relevant part) (emphasis added).

There is no question that a sexual assault on a four year old child resulting in bruising and a torn hymen is considered

abuse under the definitions of both the PFA Act and the Child Protective Services Act. After considering the evidence presented at the hearing, we concluded that the child was sexually abused most likely while in Mother's care and suffered bodily injury as a result. In order to protect the child from any further sexual abuse, it was necessary and in the child's best interests for this [c]ourt to enter a PFA against Mother, because Mother is the person responsible for the child, and Mother resides with the alleged perpetrator, "Uncle Phil." At the time of the hearing, Mother continued to reside with Phillip, even though she knew from two police departments that [A.L.T.] was not allowed to come home with Mother so long as Mother resided with Phillip. We found that because Mother continued to reside with the alleged perpetrator, and because Mother has periods of custody of the child pursuant to the existing custody order and, during those times, the child resides with Mother and the alleged perpetrator, Mother poses a continued risk of abuse towards the child. Mother clearly does not take the allegations seriously, and it is questionable whether Mother even believes her daughter has been sexually assaulted. The only way to ensure the current and future safety of the child is to limit Mother's custody of the child to visitation in Schuylkill County.

We found Mother's testimony not to be credible. She clearly believes that nothing happened between [A.L.T.] and "Uncle Phil," but has no explanation for [A.L.T.'s] injuries.

The purpose of the PFA Act is not to determine criminal culpability. ***Boykin v. Brown***, 868 A.2d 1264, 1266 (Pa. Super. 2005). Father is not required to establish that abuse occurred beyond a reasonable doubt, only by a preponderance of the evidence. ***Id.*** We found it necessary to enter the order to provide the minor child with immediate protection from further sexual abuse.

PCO at 6-9 (unnumbered; emphasis in original; footnote omitted).

From the PFA court's overall discussion, the legal authority on which it relies, and the emphasis it places on certain portions of that law, it is evident that the PFA court concluded that Mother's conduct constituted "abuse" under the PFA because (1) she knew about the alleged assault of A.L.T. and

- 9 -

failed to act, and (2) because she continues to live with the alleged perpetrator of the assault, thereby posing a risk of continued abuse to A.L.T. We need not determine if these are valid bases on which to conclude that a defendant committed "abuse" warranting protection under the PFA Act because, even if they are, the record does not support the PFA court's findings in these regards.

First, the only evidence that Mother knew of the assault and failed to act was Father's testimony that A.L.T. told him "that she reported it to her mother and nothing was done about it." N.T. at 12.[2] As discussed *supra*, this hearsay statement by A.L.T. was inadmissible, as the court failed to satisfy the dictates of section 5985.1(a) and (a.1). Without that evidence, the record is void of any indication that Mother knew of the alleged abuse of A.L.T. and failed to act. Second, the only evidence that "Uncle Phil" was the perpetrator of the sexual assault of A.L.T. was A.L.T.'s inadmissible hearsay statements to Father.[3] Because there was no other evidence demonstrating

_____

[2] Mother's counsel immediately objected to this testimony on the basis that it was hearsay. ***Id.***

[3] We acknowledge that A.L.T. vaguely named 'her uncle' as the perpetrator in the medical record of A.L.T.'s hospital examination. However, the contents of that record were not admitted into evidence; instead, the report was admitted for the limited purpose of showing that A.L.T. sought medical treatment. ***See*** N.T. at 8; PCO at 2 (unnumbered). Accordingly, the PFA court "did not rely on the contents of the medical report in making [its] decision." PCO at 10 (unnumbered).

*(Footnote Continued Next Page)*

that "Uncle Phil" was the person who abused A.L.T., the court's finding that Mother is placing A.L.T. at risk of further abuse by continuing to reside with "Uncle Phil" is unsupported by the record.

In sum, we are compelled to conclude that the PFA court erred by admitting A.L.T.'s hearsay statements, without which the evidence is insufficient to support the court's entry of a final PFA order against Mother.[4] Accordingly, we vacate the court's June 11, 2014 order. Due to this disposition, we need not address Mother's remaining issues.

Order vacated. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/4/2015


_(Footnote Continued)_ ─────────

Additionally, the parties stated that there is an ongoing criminal investigation involving "Uncle Phil." However, there was no evidence admitted regarding the scope or details of that investigation.

[4] We point out that nothing in our disposition precludes Father from seeking protection from abuse, on behalf of A.L.T., against "Uncle Phil."