J-A17019-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| MUSAALI BOND | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CRISSIE PRICE | |
| Appellant | No. 2481 EDA 2015 |

Appeal from the Order Dated July 16, 2015
In the Court of Common Pleas of Philadelphia County
Domestic Relations at No(s): 1403V7859

BEFORE: GANTMAN, P.J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED OCTOBER 21, 2016**

Crissie Price appeals *pro se* from a final protection from abuse (PFA)[1]

order entered against her in the Court of Common Pleas of Philadelphia

County. The trial court entered the PFA order after concluding that Price

"intentionally . . . cause[d] injury to"[2] the victim, her ex-boyfriend,[3] Appellee

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** Protection From Abuse Act (PFAA), 23 Pa.C.S. §§ 6101-6122.

[2] 23 Pa.C.S. § 6102 (Definitions):

(a) General rule. — The following words and phrases when used
in this chapter shall have the meanings given to them in this
section unless the context clearly indicates otherwise:

"Abuse." —The occurrence of one or more of the following
acts between family or household members, sexual or
intimate partners or **persons who share biological
parenthood**:

*(Footnote Continued Next Page)*

Musaali Bond, or put him "in fear of imminent serious bodily injury," when she struck him with her minivan and threw a large rock through his living room window.[4]  After careful review, we affirm.

The facts, as found by the trial court, are aptly summarized as follows:

Petitioner, Musaali Bond, testified that on March 14, 2014, at his home, located at 7262 Leonard Street, Philadelphia, at approximately 7:45 PM, Ms. Price knocked on his door. (N.T. 5/12/15 at 10 -11).  He went to the window, looked out of the blinds and saw Ms. Price. (N.T. 5/12/15 at 12).

At that time, he called the police because, "It's always an incident. It's always a problem." [(*Id.*)].

*(Footnote Continued)* _____

(1) **Attempting to cause or intentionally, knowingly or recklessly causing bodily injury**, serious bodily injury, rape, involuntary deviate sexual intercourse, sexual assault, statutory sexual assault, aggravated indecent assault, indecent assault or incest with or without a deadly weapon.

(2) **Placing another in reasonable fear of imminent serious bodily injury**.

23 Pa.C.S. §§ 6102(a)(1), (a)(2) (emphasis added).

[3] Price and Bond had a child together; she was four years old at the time of the underlying incident.

[4] Price was also charged criminally for criminal mischief, endangering the welfare of a child (EWOC), simple assault, possession of an instrument of crime (PIC), aggravated assault, and recklessly endangering another person (REAP).  She went to trial on mischief, PIC, simple assault and REAP; however, she was acquitted of all charges.  We note the differing standards of proof required at criminal and PFA trials. *See Boykin v. Brown*, 868 A.2d 1264 (Pa. Super. 2005) (PFA petitioner not required to establish that abuse has occurred "beyond a reasonable doubt," but only establish it by "preponderance of the evidence.").

While he was on the phone with the police, the knocking on the door turned into banging on the door, and Mr. Bond's fiancé, Marshene Robinson, went to the door to see what was going on. (N.T. 5/12/15 at 13). While still on the phone with the police, Mr. Bond could hear loud yelling by Ms. Price and Ms. Robinson. He went to the front door and saw the two women "tussling over a broom." (N.T. 5/12/15 at 14).

He "asked Miss Price to let the broom go, she wouldn't, so I gave it to her. . . and closed the door." He testified he locked the door, and three to four seconds later, his front door window was broken. (N.T. 5/12/15 at 16). Petitioner testified that his window was broken with a rock about the size of his hand. It was a red rock that he recognized from his front yard. He stated that he then went outside to inquire of Ms. Price, as to the reason she had broken his window. (N.T. 5/12/15 at 17).

An argument ensued and Petitioner testified he was threatened. He testified that Petitioner was screaming and "threatening me with her brothers going to do this and that." (N.T. 5/12/2015 at 18). He then went to look for Respondent's car, to record her license plate number. [(*Id.*)].

He walked toward a car that was double[-]parked, assuming that was the vehicle belonging to Ms. Price. Ms. Price allegedly walked along side of him, yelling at him. (N.T. 5/12/15 at 19). He saw a neighbor in the car and realized it was not Ms. Price's car and began to head back towards his home.

He testified that at this point, Ms. Price ran ahead of him and jumped into a vehicle. (N.T. 5/12/15 at 20 -21). He was about three or four houses away from her when she got into what he believed was a minivan. (N.T. 5/12/15 at 21).

Petitioner testified that Ms. Price jumped in the vehicle, pulled out of the parking space, and "comes down the side that I'm walking at and strikes me with the car." (N.T. 5/12/15 at 22). It was Mr. Bond's estimate that the vehicle was moving approximately 10 miles per hour, and that she then stopped right in front of him, striking him. (N.T. 5/12/15 at 23).

He testified that the lower bumper came in contact with his left leg, and that it hurt. As a result, he sustained injuries to his left shin, of swelling and bleeding, (N.T. 5/12/15 at 24)[,] and next day, he went to Nazareth Hospital. (N.T. 5/12/15 at 24 -25).

Petitioner submitted Petitioner's Exhibit #1 (P -1) a photo of the injuries to his leg.

He further testified that he informed Ms. Price that she had struck him and that she threatened to hit him again if he did not get out of the way. (N.T. 5/12/15 at 28). She then pulled off, brushing his leg again. [(*Id.*)].

The police arrived and Ms. Price was arrested. (N.T. 5/12/15 at 29). Petitioner also submitted Petitioner's Exhibit #2 (P -2), his discharge record from Nazareth Hospital.

Finally, Petitioner testified that the swelling on his leg lasted approximately three (3) days, and that he had problems with the use of his leg for about a week. (N.T. 5/12/15 at 32-33).

\*     \*     \*

The trial resumed on July 16, 2015, at which time Mr. Bond was called on redirect examination. (N.T. 7/16/15 at 9).

[]Respondent, Ms. Price testified that on March 14, 2014, at approximately 8:00 PM, she went to Mr. Bond's house, with their daughter, Masyah. Ms. Price wanted to ask Mr. Bond, if he could watch their daughter. (N.T. 7/16/15 at 17). She testified that she sent her daughter, age four, to knock on the door. Ms. Price then went and knocked on Mr. Bond's door three times. (N.T. 7/16/15 at 17 -18).

On the third knock, Ms. Robinson answered the door. (N.T. 7/16/15 at 18). Respondent and Ms. Robinson exchanged words. According to Ms. Price, while the child allegedly tried to go into the house, Ms. Robinson pushed the door onto the child. (N.T. 7/16/15 at 19).

Ms. Price testified that she and the child walked back toward the gate, when she heard the door open, whereupon Ms. Robinson held a broom in her hand. They again exchanged words and Ms. Robinson then picked [] up a shovel. Ms. Price stated that by the time she looked back up, the broom was flying towards her and her daughter. Thereafter, Ms. Price picked [] up the broom and chased Ms. Robinson to the house. (N.T. 7/16/15 at 20).

The Respondent testified that she first saw Mr. Bond, right after the window broke. She further testified that the window was broken as a result of the scuffle between the two women with

- 4 -

the broom and the shovel. (N.T. 7/16/15 at 21 -22). It was her testimony that Petitioner said she was going to pay for his "F'n" window, and that Mr. Bond allegedly went to the street, as did Ms. Price and her daughter.

Ms. Price stated that she got into her minivan, that Mr. Bond stood behind her vehicle, so that she could not pull out, and that she eventually got out of the space. She did not strike him at any point while getting out of the space. (N.T. 7/16/15 at 22-24). Ms. Price then drove away. She later returned and was taken into custody. (N.T. 7/16/15 at 25).

Ms. Price also testified that she and Ms. Robinson had a "history" and that Ms. Robinson had previously tried to get a "PROTECTION FROM ABUSE ORDER" against her, which was "thrown out." (N.T. 7/16/15 at 25 -28).

\* \* \*

On cross examination, Ms. Price acknowledged that Mr. Bond did not know she was coming over on the night of the incident. She also acknowledged that she picked [] up the broom, as Ms. Robinson was going back toward the house, and went toward Ms. Robinson. (N.T. 7/16/15 at 31 -32). She testified that she had both the broom and the shovel and was trying to open the door, while Mr. Bond and Ms. Robinson were trying to close the door. (N.T. 7/16/15 at 33). She testified, "I was trying to get in -I was trying to go after her." (N.T. 7/16/15 at 35).

Trial Court Opinion, 10/16/15, at 4-6, 7-9.

On July 16, 2015, the court entered a final PFA order against Price, which expired on March 14, 2016. On July 27, 2015, Price, filed a petition for reconsideration of the court's PFA order. On July 31, 2015, the court denied Price's reconsideration petition. Price filed a timely notice of appeal

on August 14, 2015.[5]   She presents the following issues for our consideration:

> (1) Whether counsel demonstrated "ineffective representation," for failing to present documentary evidence at the PFA hearing [w]hich could have shed plausible light on the court, and raised grave questions as to the credibility of appellee[e] (Musaali Bond), and the underlying facts as to what happened on March 14, 2014[.]
>
> (2) Whether counsel was "ineffective," for failing to question or present questions at the PFA hearing, as to appellee[e's] (Musaali Bond) credibilty and inconsistencies as to what happened on March 14, 2014[.]
>
> (3) Whether the PFA court erred in believing Mr. Bond[']s fraudulent and inconsistent testimony and statements [w]hich raised grave credibility questions as to the candidness, and the underlying facts that transpired on March 14, 2014 ?
>
> (4) Whether the PFA court erred in the issuance of a "protection from abuse order" [w]hen the evidence was insufficient, and there was not a "preponderance" of evidence presented for the issuance of a "protection from abuse order"?

Appellant's Brief, at iii.

Price's first two issues on appeal center around her claim that she was denied her Sixth Amendment right, under the United States Constitution, to effective representation at the PFA proceeding.  We note that with regard to

---

[5] *See Provident Nat'l Bank v. Rooklin*, 378 A.2d 893, 897 (Pa. Super. 1977) (order denying reconsideration, rehearing, or permitting reargument of a final order is not reviewable on appeal; in such cases appeal properly lies from final order); Pa.R.A.P. 903 (notice of appeal shall be filed within 30 days after the entry of order from which appeal is taken).

the right to counsel in PFA proceedings, this Court has previously determined:

> Unlike cases arising under the Juvenile Act or cases concerning involuntary commitment, there is no legislatively created right to court-appointed counsel in PFA proceedings. Rather, the PFA only requires that the court advise a defendant of the right to be represented at the hearing by counsel. **See** 23 Pa.C.S.A. § 6107(a). The right to be represented by counsel cannot be equated with the right to receive court-appointed counsel. The right to be represented by counsel in civil proceedings is one accorded to all individuals. However, all civil litigants do not have the right to court-appointed counsel.

**Weir v. Weir**, 631 A.2d 650, 657 (Pa. Super. 1992). "The **Weir** court held that a PFA action is not the type of proceeding which involves the deprivation of a constitutional right so as to require the appointment of counsel." **Varner v. Holley**, 854 A.2d 520, 523 (Pa. Super. 2004). **See In re Penny**, 509 A.2d 338, 340 (Pa. Super. 1986) ("To meet the special exigencies of abuse cases, acceptable procedures have been fashioned which suspend, temporarily, the due process rights of the alleged abuser and provid[e] for summary procedures for implementation of orders.").

Accordingly, because there is no constitutional right to the appointment of counsel in a quasi-civil, PFA proceeding, there can be no derivative ineffective assistance claim in such matters. **Cf.** U.S. Const. Amend. 6 ("In all **criminal** prosecutions, the accused shall have the right to . . . the Assistance of Counsel for his defence."). Thus, Price is not entitled to relief.

The crux of Price's final two claims, which are at best disorganized and confusing, concern the sufficiency of the evidence.[6] Price specifically challenges the court's finding of "abuse" where she asserts the victim's testimony was "inconsistent and ambiguous." Appellant's Brief, at 5, 8-9. Essentially, Price takes issue with the trial court's credibility determinations.

The trial court, as fact-finder, was free to find the victim, Bond, more credible and reject Price's testimony. **See Mescanti v. Mescanti**, 956 A.2d 1017 (Pa. Super. 2008). The court chose to believe that Price intentionally drove her minivan into Bond, causing him to sustain a leg injury. In addition to the victim's testimony, the abuse finding was also supported by injury photographs, a police report, and medical records. We find that the record contains sufficient evidence to prove abuse, as defined in section 6102 of the PFAA, by a preponderance of the evidence and, thus, supports the court's final PFA order. **Karch**, **supra**; **Custer v Cochran**, 933 A.2d 1050 (Pa. Super. 2007) (petitioner's testimony is sufficient to prove abuse under PFAA if it is believed by trial court).

---

[6] When considering a claim that the evidence was insufficient to support a PFA order, this Court views the evidence and all reasonable inferences therefrom in the light most favorable to the petitioner. **See Miller on Behalf of Walker v. Walker**, 665 A.2d 1252, 1255 (Pa. Super. 1995); **see also Karch v. Karch**, 885 A.2d 535, 537 (Pa. Super. 2005) (we determine if record contains sufficient evidence to prove abuse by preponderance of evidence).

Order affirmed.[7]

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/21/2016

_____

[7] We, herein, deny Appellee's application for relief seeking to deem this appeal moot because the PFA order has expired. Ironically, the very case that Appellee cites in his application compels us to rule against him. **See Shandra v. Williams**, 819 A.2d 87, 90 (Pa. Super. 2003) (quoting **Snyder v. Snyder**, 629 A.2d 977, 980 n.1 (Pa. Super 1993), holding that public policy exception to mootness doctrine applies in PFA cases; "Protection From Abuse Act Orders are usually temporary, and it is seldom that we have the opportunity to review one before it expires.").