J-S25019-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JONATHAN BENNETT | : | |
| | : | |
| Appellant | : | No. 198 EDA 2022 |

Appeal from the Judgment of Sentence Entered May 18, 2021
In the Court of Common Pleas of Philadelphia County
Criminal Division at CP-51-CR-0005523-2019

BEFORE:  NICHOLS, J., MURRAY, J., and McCAFFERY, J.

MEMORANDUM BY MURRAY, J.:                    **FILED AUGUST 8, 2023**

Jonathan Bennett (Appellant) appeals from the judgment of sentence imposed after the trial court convicted him of attempted murder, aggravated assault, simple assault, and persons not to possess firearms.[1]  We affirm.

The trial court detailed the underlying facts:

> On or around March 5, 2019, Elijah Joseph (hereinafter "Mr. Joseph" [or "the victim"]) moved into the second-floor apartment [(the apartment)] located at 5918 N. Marvine Street in the [C]ity and [C]ounty of Philadelphia.  Notes of Testimony (hereinafter "N.T."), 2/16/21, at 15-16.  Mr. Joseph rented a bedroom, which included a lock on the bedroom door, from the individual currently residing in the apartment.  ***Id.***  Said individual was identified as Whitney Allen (hereinafter "Ms. Allen").  ***Id.***  On the morning of March 12, 2019, a verbal altercation occurred between Mr. Joseph and Ms. Allen.  ***Id.*** at 17-19.  Mr. Joseph responded by offering to vacate the apartment on the condition that the one hundred fifty (150) dollars he paid as rent be refunded.  ***Id.***  Ms. Allen agreed to this condition and told Mr. Joseph that she would retrieve the

---

[1] 18 Pa.C.S.A. §§ 901(a) and 2502(a), 2702(a), 2701(a), 6105(a)(1).

rent money from her mother. *Id.* Following this discussion, Mr. Joseph left the apartment. *Id.*

After Mr. Joseph left the apartment, Ms. Allen reported a disturbance at the apartment to the police and Officer [Joseph] Sugan responded to the call. *Id.* at 72-76. Officer Sugan testified that upon his arrival at [the apartment], Ms. Allen informed him that she was having an issue with a tenant and needed to know how to evict said tenant. *Id.* More specifically, Ms. Allen requested that Officer Sugan kick the tenant's bedroom door down. *Id.* Officer Sugan told Ms. Allen that he could not legally comply with her request and explained that she would have to evict the tenant through the court system. *Id.* Following this interaction with Ms. Allen, Officer Sugan generated a police report memorializing the encounter. *Id.*

At or around 8:00 P.M. on March 12, 2019, Mr. Joseph encountered Ms. Allen's mother, Angela Horn (hereinafter "Ms. Horn"), and Appellant while walking near the … apartment. *Id.* at 20. Mr. Joseph briefly interacted with Ms. Horn, before continuing his walk. *Id.*

At or around 10:00 P.M. on March 12, 2019, Mr. Joseph returned to the … apartment to retrieve his Play Station [video game console]. *Id.* at 20-32. Mr. Joseph began recording a video on his cellphone shortly before he arrived at the apartment [(the video)]. *Id.* [As we discuss below, the trial court permitted the prosecution to play the video during direct examination of Mr. Joseph, over the defense's objection that the video is "protected under … the Pennsylvania Wiretap law."[2] *Id.* at 22.] When Mr. Joseph entered the apartment, Ms. Allen and her mother were already inside. *Id.* [at 29-30.] Despite their presence, Mr. Joseph walked from the entrance of the apartment to his locked bedroom door. *Id.* After reaching the door to his bedroom, Mr. Joseph observed Appellant enter the apartment holding a gun. *Id.* [at 31.] About five seconds after Appellant entered the apartment, Appellant fired the gun, hitting Mr. Joseph in the right thigh and back. *Id.* at [32,] 33-36.

---

[2] "In general, the Wiretap Act prohibits the interception, disclosure or use of any wire, electronic or oral communication." *Commonwealth v. Byrd*, 235 A.3d 311, 319 (Pa. 2020) (citation and quotation marks omitted); 18 Pa.C.S.A. § 5701 *et seq.*

Mr. Joseph testified that after he heard the initial gun shot, he immediately turned away from Appellant to avoid getting shot in the face or chest. *Id.* [at 35-36.] After Mr. Joseph was shot in the right thigh and back, he fell to the ground and attempted to "play dead" because he realized Appellant was "trying to kill" him. *Id.* Mr. Joseph remained on the ground until he was alone inside the apartment, at which point Mr. Joseph called 911. *Id.* at 37. Mr. Joseph stated that he believed he was going to die after he was shot. The police arrived shortly thereafter and transported Mr. Joseph to Albert Einstein Medical Center. *Id.* at 38.

Detective [Anthony] Glaviano and his partner, Detective Cahill, were assigned to investigate the incident. *Id.* at 76. Detective Glaviano initially proceeded to Albert Einstein Medical Center but was unable to interview Mr. Joseph because he was in critical condition. *Id.* Later that night, a search warrant was issued and executed inside [the apartment]. An iPhone belonging to Mr. Joseph, two .45 caliber [fired cartridge casings,] and various documents were recovered from the crime scene.

On March 13, 2019, Ms. Allen and Ms. Horn traveled to the Northwest Detectives, where Ms. Allen provided a formal statement detailing the events of the shooting. *Id.* at 85-87. More specifically, Ms. Allen identified the shooter as [] Appellant … and stated that [Appellant] was the longtime boyfriend of her mother, Ms. Horn. *Id.* Furthermore, Ms. Allen explained that she originally intended to offer Mr. Joseph one hundred fifty (150) dollars to vacate the apartment on the night of March 12, 2019. *Id.* However, Ms. Horn and Mr. Joseph began to argue, at which point Appellant entered the apartment and shot Mr. Joseph twice in the back without provocation. *Id.* After Mr. Joseph was shot, Appellant ordered Ms. Allen and Ms. Horn to flee the premises. *Id.* Ms. Allen also informed detectives that Ms. Horn had come to Northwest Detectives with the intention of lying to detectives about her involvement in the shooting. *Id.* Ms. Horn briefly spoke with detectives but refused to give a formal statement and denied that any shooting occurred at [the apartment]. *Id.*

The contents of said statements le[]d Detective Glaviano to develop Appellant as a suspect in the shooting of Mr. Joseph. *Id.* On March 14, 2019, Detective Glaviano and his partner returned to Albert Einstein Medical Center, where Mr. Joseph was shown a photo lineup that included a photo of Appellant. *Id.* at 88. Mr.

Joseph indicated that the third photo in the lineup was the individual that shot him, stating "I recognize his face. I just don't remember seeing those tattoos." *Id.* at 64-65. Mr. Joseph was asked if he was confident in his identification, to which he responded, "It looks like him. I'm pretty sure that's the one that shot me." *Id.* at [59, 98]. Detective Glaviano testified that Mr. Joseph immediately began to cry and shake when shown the photo of Appellant. *Id.* [at 87-88.] After Mr. Joseph identified Appellant as the individual [who] shot him, Detective Glaviano took Mr. Joseph's formal statement. *Id.*

Hospital records show that Mr. Joseph was treated at Albert Einstein Medical Center for multiple gunshot wounds, which resulted in a bullet wound to the right forearm, bullet wound to the chest cavity, T5 closed fracture, T6 vertebral body fracture, T7 vertebral body fracture, L3 spinal processes fracture, and L4 spinal processes fracture. *Id.* at 106-[]08. Upon Mr. Joseph's arrival at the hospital, his injuries were found to be operable, and he underwent multiple surgeries. *Id.* Mr. Joseph was discharged directly to Moss Rehab Center on or around March 22, 2019. *Id.* Mr. Joseph is now a paraplegic due to the bullet fragments that remain in his spinal cord. *Id.*

Trial Court Opinion, 5/25/22, at 2-5 (footnote added).

Following a non-jury trial on February 16, 2021, the trial court convicted Appellant of the aforementioned crimes. The trial court deferred sentencing for the preparation of a pre-sentence investigation report (PSI). On May 18, 2021, the trial court sentenced Appellant to an aggregate 25 – 50 years in prison. That same day, Appellant timely filed a post-sentence motion (PSM) claiming the verdicts were against the weight of the evidence, and the trial court imposed a manifestly excessive sentence. Appellant's PSM was denied by operation of law on September 20, 2021. He did not appeal.

On October 23, 2021, Appellant filed a counseled petition pursuant to the Post-Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546. Appellant

sought reinstatement of his direct appeal rights *nunc pro tunc*, based on defense counsel's ineffectiveness for failing to file a requested direct appeal. PCRA Petition, 10/23/21, ¶¶ 6-10. The court granted Appellant's PCRA petition on January 4, 2022, and reinstated his direct appeal rights *nunc pro tunc*. This timely appeal followed. Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents four issues for review:

1. Did the trial court err in overruling defense counsel's objection to the admission of a recording that was inadmissible under 18 Pa.C.S. § 5703 and did not fall under any of the exceptions of 18 Pa.C.S. § 5704?

2. Did the trial court err in overruling defense counsel's objection to statements made in a recording as they constituted inadmissible hearsay?

3. Did the trial court err by denying [Appellant's] request for a new trial as the weight of the evidence should have resulted in an acquittal of all charges?

4. Was the sentence manifestly excessive and unreasonable?

Appellant's Brief at 5.

Appellant first claims the trial court committed reversible error when it overruled Appellant's objection to admission of the video. Appellant contends the video "was inadmissible pursuant to the Wiretap Act" and not subject to any exception. *Id.* at 13.

Our "standard of review for a trial court's evidentiary rulings is narrow." ***Commonwealth v. Mendez***, 74 A.3d 256, 260 (Pa. Super. 2013) (citation omitted).

- 5 -

> When we review a trial court's ruling on admission of evidence, we must acknowledge that decisions on admissibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law. In addition, for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused.

*Commonwealth v. Jackson*, 283 A.3d 814, 817 (Pa. Super. 2022) (citation omitted).

As noted above, the Wiretap Act prohibits the interception, disclosure or use of any wire, electronic or oral communication, unless an exception applies. *Byrd*, *supra*; 18 Pa.C.S.A. § 5703(1)–(3); *see also* 18 Pa.C.S.A. § 5721.1(a) (providing generally, "no person shall disclose the contents of any wire, electronic or oral communication, or evidence derived therefrom, in any proceeding in any court…."). The Wiretap Act defines "oral communication" as "oral communication uttered by a person possessing an expectation that such communication is not subject to interception under circumstances justifying such expectation." 18 Pa.C.S.A. § 5702. Finally, a claimant alleging a Wiretap Act violation bears the burden of establishing, *inter alia*, that the claimant possessed a justifiable expectation that the communication would not be intercepted. *Agnew v. Dupler*, 717 A.2d 519, 522 (Pa. 1998).

The Wiretap Act provides numerous exceptions to the general prohibition announced in *Byrd*, *supra*, including an exception for

[a]ny victim … to intercept the contents of any wire, electronic or oral communication, if that person is under a reasonable suspicion that the intercepted party is committing, about to commit or has committed a crime of violence and there is reason to believe that evidence of the crime of violence may be obtained from the interception.

18 Pa.C.S.A. § 5704(17). The Wiretap Act defines "crime of violence" by listing numerous offenses under the Crimes Code. *Id.* § 5702 (including, *inter alia*, aggravated assault).

Instantly, Appellant's counsel argued at trial that the exception at Section 5704(17) was inapplicable:

One of the exceptions is crimes of violence, which if the individual believes that they'll be recording a crime of violence, obviously, you should allow that [evidence]. But in a situation where the [victim] testified that he thought [a person] was going to be lying[,] that will not [fall] under the exception.

N.T., 2/16/21, at 23. Appellant's counsel referenced Mr. Joseph's testimony on direct examination:

Just before I got to the [apartment,] I started recording, because I felt [Ms. Allen] was going to … call the cops or say I threatened her or something. So I just started recording.

*Id.* at 20. The trial court overruled Appellant's objection, *id.* at 24, and permitted the prosecution to play the video depicting the shooting. *See id.* at 24-38.

Appellant argues the exception at Section 5704(17) is inapplicable because Mr. Joseph's trial testimony purportedly "revealed that the [video] recording was made not to capture evidence of a violent crime, but rather to dispute accusations that [Ms.] Allen could make when [Appellant] entered the

- 7 -

[apartment]." Appellant's Brief at 14 (citing Mr. Joseph's testimony regarding his motive when he began recording the video); *see also* N.T., 2/16/21, at 20.

Contrary to Appellant, the Commonwealth argues:

[T]he evidence at issue does not meet the definition of "oral communication" protected by the [Wiretap Act.] Here, [Appellant] had no justifiable expectation that his communications would not be subject to interception. He was not in his own home during the recorded incident. He was in [Mr. Joseph's] home.

Commonwealth Brief at 9; *see also* 18 Pa.C.S.A. § 5702, *supra* (defining "oral communication"). In the alternative, the Commonwealth states: "[A]ssuming *arguendo* that this was an interception of protected oral communications—it would fall under the violent crime exception" at 18 Pa.C.S.A. § 5704(17). Commonwealth Brief at 10. We agree.

The trial court opined that it did not err in overruling Appellant's objection to the video's admission. The court explains that the exception at Section 5704(17) applies, because

the Commonwealth established that Mr. Joseph, the victim, was under a reasonable suspicion that Ms. Allen, Ms. Horn, and Appellant were about to commit a crime of violence against him and had reason to believe that evidence of the crime might be obtained from recording his interaction with said individuals. Preliminarily, the term "crime of violence" includes attempt to commit murder and aggravated assault. 18 Pa.C.S. § 5702. Further, Mr. Joseph was acting as a private citizen, and was not acting as an agent of the Commonwealth or at the discretion of law enforcement. 18 Pa.C.S. § 5704. Mr. Joseph began making the [video] recording after [previously] having an unrecorded altercation with Ms. Allen, as well as an unrecorded encounter with Ms. Horn and Appellant. N.T., 2/16/21, at 17-20. It was after these interactions that Mr. Joseph began to record his return to

[the apartment] in order to document and gather evidence of a potential violent crime. *Id.* at 20-36. After Mr. Joseph was shot, he informed law enforcement from his hospital bed that he had captured a video and audio recording of the shooting on his cellphone. N.T., 2/16/21, at 77-92. The iPhone [police] found at the crime scene was then returned to Mr. Joseph and the video of the incident was recovered. *Id.* Based on these facts, Mr. Joseph's recording falls squarely within the exception to the Wiretap Act under 18 Pa.C.S. § 5704(17). Accordingly, Appellant's claim lacks merit.

Trial Court Opinion, 5/25/22, at 8-9 (some capitalization modified). Our review discloses that the record supports the trial court's reasoning. Contrary to Appellant's claim, the trial court did not abuse its discretion in overruling Appellant's objection to admission of the video. Thus, Appellant's first issue lacks merit.

In his second issue, Appellant contends the trial court erred in overruling his objection to statements made by people in the video. *See* Appellant's Brief at 14-16. According to Appellant, the out-of-court statements constitute inadmissible hearsay, as "they were being offered for the truth of the matter asserted … to show, consistent with [Mr.] Joseph's testimony, that an argument actually occurred" at the apartment. *Id.* at 15. Appellant further claims the statements "do not fall under any established exceptions" to the rule against hearsay. *Id.* at 16.

The Commonwealth counters that the video

recording is [] not hearsay because it is **not being used to prove the truth of the matter asserted**. The [video] recording contains an argument between the victim, [his] roommate Whitney Allen, her mother Angela Horn, and [Appellant]. It was not introduced at trial to establish the truth of the specific

- 9 -

statements made, but to establish that a heated argument occurred (proving motive) and [Appellant] was the shooter (proving identity).

Commonwealth Brief at 12 (emphasis added).

"Hearsay generally is inadmissible unless it falls within one of the exceptions to the hearsay rule delineated in the Pennsylvania Rules of Evidence." *Commonwealth v. Rivera*, 238 A.3d 482, 492 (Pa. 2020); Pa.R.E. 802 (general hearsay rule). Our Rules of Evidence define hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, **offered** in evidence **to prove the truth of the matter asserted**." Pa.R.E. 801(c) (emphasis added). However, "[w]hen a hearsay statement is offered for a purpose other than proving the truth of its contents, it is not hearsay and is not excludable under the hearsay rule." *Commonwealth v. Hood*, 872 A.2d 175, 181 (Pa. Super. 2005); *see also Commonwealth v. Puksar*, 740 A.2d 219, 225 (Pa. 1999) ("statements are admissible to establish ill-will or motive where they are not being offered for the truth of the matter contained therein.").

Here, the trial court explained that it properly overruled Appellant's objection because the statements were **not hearsay**:

> The statements contained in the video and audio recording did not constitute inadmissible hearsay because said statements were **not offered for the truth of the matter asserted** therein. N.T., 2/16/21, at 27-30. Instead, the statements involving the dispute over the apartment and rent were **offered to establish Appellant's *motive* for shooting Mr. Joseph by showing that ill-will existed** between Ms. Horn, Ms. Allen, and Mr. Joseph. *Id.* Accordingly, the statements made in the audio and video

- 10 -

recording were admissible, as they were not offered to prove the truth of the matter asserted, but rather to establish a motive for the shooting. [**See Puskar**, **supra** (hearsay "statements are admissible to establish … motive where they are not being offered for the truth").]

Should it be determined that the statements made in the video and audio recording constitute hearsay, nevertheless, the issue lacks merit because said statements are admissible under the excited utterance exception to the rule against hearsay. The Pennsylvania Rules of Evidence provide certain exceptions to the rule against hearsay evidence. **See** Pa.R.E. 803. One such exception is an excited utterance. **Id.** An excited utterance is "a statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Pa.R.E. 803(2). An excited utterance need not describe or explain the event, but only relate to it, and it need not be made contemporaneously with the event. **Id.**

Under the excited utterance exception, the timing of the statement is crucial and must show that "the nervous excitement continues to dominate while the reflective processes remain in abeyance." **Id.** (quoting **Commonwealth v. Gore**, 396 A.2d 1302, 1305 (Pa. Super. 1978)). The determination of what constitutes an excited utterance is a fact[-]specific inquiry, which is made on a case-by-case basis. **Commonwealth v. Wholaver**, 989 A.2d 883, 907 (Pa. 2010). In determining that the statement was an excited utterance, this court considered the following factors: whether the statement was a narrative; the time that elapsed between the occurrence and the utterance; and whether the declarant had the opportunity to, or did, speak to others. **See Commonwealth v. Carmody**, 799 A.2d 143, 147 (Pa. Super. 2002) (citing **Commonwealth v. Sanford**, 580 A.2d 784, 788 (Pa. 1990), *appeal denied*, 588 A.2d 508 (Pa. 1991)).

In Appellant's case, the [trial] court did not allow inadmissible hearsay when the court permitted the statements made in the video and audio recording to be admitted into evidence. The statements were admissible pursuant to the excited utterance exception to the rule against hearsay. Pa.R.E. 803(2). The statements of Ms. Horn and Ms. Allen related to the ongoing dispute regarding the apartment and rent. N.T., 2/16/21, at 25-30. Further, Ms. Horn and Ms. Allen were screaming said statements during the heated argument that ensued upon Mr.

- 11 -

Joseph's return to [the apartment]. ***Id.*** Thus, the statements contained in the audio and video recording were made during the occurrence, both in time and place, as to exclude the likelihood that the statement emanated in whole or in part from Ms. Horn and Ms. Allen's reflective faculties. Accordingly, Appellant's claim lacks merit.

Trial Court Opinion, 5/25/22, at 9-11 (emphasis added; some capitalization modified). Again, our review discloses that the trial court's rationale and conclusion is supported by the record and law. We thus conclude that Appellant's second issue lacks merit. ***See id.***

In his third issue, Appellant claims the trial court "erred by denying [Appellant's] request for a new trial as the weight of the evidence should have resulted in an acquittal of all charges." Appellant's Brief at 17 (bold omitted). Appellant emphasizes, "there was no physical evidence recovered to link [Appellant] to the shooting." ***Id.*** According to Appellant, "there was no[] concrete identification made of [Appellant] as the shooter until trial." ***Id.*** Appellant asserts that when police interviewed Mr. Joseph at the hospital on March 14, 2019, and presented him with a photo lineup containing Appellant's picture, Mr. Joseph was unable to identify Appellant,

> beyond a reasonable doubt[,] because [Mr.] Joseph's exact statement [in response to viewing Appellant's] photo was "it looks like him, I'm pretty sure he's the one who shot me."

***Id.*** (quoting N.T. (trial), 2/16/21, at 59). Finally, Appellant avers Mr. Joseph's "testimony is inconsistent and not credible." ***Id.*** at 18.

The Commonwealth responds that the verdicts are "not against the weight of the evidence because physical evidence is not a requirement for a

conviction and the victim's identification of [Appellant] was credible."
Commonwealth Brief at 13 (bold omitted).  The Commonwealth emphasizes
this Court's holding in **Commonwealth v. Johnson**, 180 A.3d 474 (Pa.
Super. 2018):

> [T]he uncorroborated testimony of a single witness is sufficient to
> sustain a conviction for a criminal offense, so long as that
> testimony can address and, in fact, addresses, every element of
> the charged crime.

**Id.** at 481; **see also** Commonwealth Brief at 15.

> In reviewing Appellant's weight claim, we recognize:

> The weight of the evidence is a matter exclusively for the
> finder of fact, who is free to believe all, part, or none of the
> evidence and to determine the credibility of the witnesses.  A new
> trial is not warranted because of a mere conflict in the testimony
> and must have a stronger foundation than a reassessment of the
> credibility of witnesses.  Rather, the role of the trial judge is to
> determine that notwithstanding all the facts, certain facts are so
> clearly of greater weight that to ignore them or to give them equal
> weight with all the facts is to deny justice.

> On appeal, our purview is extremely limited and is confined
> to whether the trial court abused its discretion in finding that the
> jury verdict did not shock its conscience.  Thus, appellate review
> of a weight claim consists of a review of the trial court's exercise
> of discretion, not a review of the underlying question of whether
> the verdict is against the weight of the evidence.

**Commonwealth v. Gonzalez**, 109 A.3d 711, 723 (Pa. Super. 2015)
(citations and quotation marks omitted).  "One of the least assailable reasons
for granting or denying a new trial is the lower court's conviction that the
verdict was or was not against the weight of evidence…."  **Commonwealth
v. Clay**, 64 A.3d 1049, 1055 (Pa. 2013) (citation omitted).

The trial court addressed its exercise of discretion in rejecting Appellant's weight challenge, stating:

> The verdict was not so contrary to the evidence as to shock one's sense of justice. This court[, sitting as fact-finder,] considered the evidence, including the video that recorded the incident and the testimony of the victim, Mr. Joseph, which detailed the events of the shooting. **The court found the victim's testimony to be credible**, and that the weight of the evidence supported the verdict.

Trial Court Opinion, 5/25/22, at 14-15 (emphasis added; some capitalization modified).

As fact-finder, the trial court was free to believe all, part or none of the evidence, *Gonzalez*, *supra*, and we decline Appellant's suggestion that we reweigh the evidence. *Commonwealth v. Sanchez*, 36 A.3d 24, 27 (Pa. 2011) ("On appeal, [an appellate] Court cannot substitute its judgment for that of the [fact-finder] on issues of credibility, or that of the trial judge respecting weight."). Mr. Joseph's testimony, which the trial court expressly credited, was sufficient to sustain the verdict. *See Johnson*, *supra*; *see also Commonwealth v. King*, 959 A.2d 405, 410-11 (Pa. Super. 2008). Accordingly, we discern no abuse of discretion by the trial court's rejection of Appellant's weight claim. *See Commonwealth v. Brown*, 23 A.3d 544, 561 (Pa. Super. 2011) (concluding weight challenge did not shock one's conscience where fact-finder found eyewitness identification of defendant as perpetrator to be credible). Appellant's third issue does not merit relief.

In his final issue, Appellant claims the trial court abused its discretion in imposing a manifestly excessive and unreasonable aggregate sentence. *See* Appellant's Brief at 11, 18-19. According to Appellant, "the trial court did not give careful consideration to [Appellant's] rehabilitative needs, traumatic childhood, and unresolved mental health issues." *Id.* at 11. Appellant further contends the sentencing court improperly failed to (1) "indicate that it had considered [Appellant's PSI] and mental health report" *id.*; or (2) "state its reasons on the record justifying the imposition of sentence." *Id.*

Appellant challenges the discretionary aspects of his sentence, from which there is no absolute right to appeal. *Commonwealth v. Summers*, 245 A.3d 686, 691 (Pa. Super. 2021). Here, where Appellant has preserved his sentencing challenge in a timely PSM, he must (1) include in his appellate brief a Pa.R.A.P. 2119(f) concise statement of reasons relied upon for allowance of appeal; and (2) demonstrate there is a substantial question that the sentence is not appropriate under the Sentencing Code. *Id.*

Appellant has included a Rule 2119(f) statement in his brief. Appellant's Brief at 11. Further, he presents a substantial question. *See Commonwealth v. Knox*, 165 A.3d 925, 929-30 (Pa. Super. 2017) ("A claim that the trial court focused exclusively on the seriousness of the crime while ignoring other, mitigating circumstances, such as [the defendant's] mental health history and difficult childhood, raises a substantial question."); *Commonwealth v. Macias*, 968 A.2d 773, 776 (Pa. Super. 2009) ("The

failure to set forth adequate reasons for the sentence imposed has been held to raise a substantial question.  Likewise, an averment that the court … failed to consider all relevant factors raises a substantial question." (citations omitted)).

We are mindful that sentencing "is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion."  ***Commonwealth v. Barnes***, 167 A.3d 110, 122 n.9 (Pa. Super. 2017) (*en banc*) (citation omitted).

> In this context, an abuse of discretion is not shown merely by an error in judgment.  Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Fullin***, 892 A.2d 843, 847 (Pa. Super. 2006) (citation omitted).

> The Pennsylvania Supreme Court has explained:
>
> The reason for this broad discretion and deferential standard of appellate review is that the sentencing court is in the best position to measure various factors and determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it.  Simply stated, the sentencing court sentences flesh-and-blood defendants and the nuances of sentencing decisions are difficult to gauge from the cold transcript used upon appellate review.  Moreover, the sentencing court enjoys an institutional advantage to appellate review, bringing to its decisions an expertise, experience, and judgment that should not be lightly disturbed.

***Commonwealth v. Pasture***, 107 A.3d 21, 27 (Pa. 2014) (citations and quotation marks omitted).

The Sentencing Code provides that "the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b). "A sentencing court has broad discretion in choosing the range of permissible confinements that best suits a particular defendant and the circumstances surrounding his crime." **Commonwealth v. Celestin**, 825 A.2d 670, 676 (Pa. Super. 2003) (citation omitted). The court "need not undertake a lengthy discourse for its reasons for imposing a sentence or specifically reference the statute in question, but the record as a whole must reflect the sentencing court's consideration of the facts of the crime and character of the offender." **Commonwealth v. Schutzues**, 54 A.3d 86, 99 (Pa. Super. 2012) (citation omitted).

The trial court must also consider the sentencing guidelines. **See Commonwealth v. Sheller**, 961 A.2d 187, 190 (Pa. Super. 2008). Here, the trial court imposed sentences for each conviction within the **standard range** of the sentencing guidelines. **See** Trial Court Opinion, 5/25/22, at 12 (explaining respective guidelines, Appellant's prior record score, and the structure of Appellant's sentence); **see also** N.T., 5/18/21, at 4-5. Therefore, we may only vacate Appellant's sentence if "the case involves circumstances where the application of the guidelines would be clearly unreasonable." 42 Pa.C.S.A. § 9781(c)(2); **see also Commonwealth v. Raven**, 97 A.3d 1244,

1254 (Pa. Super. 2014).  We are mindful that "rejection of a sentencing court's imposition of sentence on unreasonableness grounds [should] occur infrequently, whether the sentence is above or below the guideline ranges."  **Commonwealth v. Walls**, 926 A.2d 957, 964 (Pa. 2007).

Finally, where a sentencing court is informed by a PSI, "it is presumed that the court is aware of all appropriate sentencing factors and considerations, and where the court has been so informed, its discretion should not be disturbed."  **Commonwealth v. Ventura**, 975 A.2d 1128, 1135 (Pa. Super. 2009) (citing **Commonwealth v. Devers**, 546 A.2d 12, 18 (Pa. 1988)).  We explained:

> In imposing sentence, the trial court is required to consider the particular circumstances of the offense and the character of the defendant.  The trial court should refer to the defendant's prior criminal record, age, personal characteristics, and potential for rehabilitation.  However, where the sentencing judge had the benefit of a [PSI], it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors.  Additionally, the sentencing court must state its reasons for the sentence on the record.  **The sentencing judge can satisfy the requirement that reasons for imposing sentence be placed on the record by indicating that he or she has been informed by the** [**PSI**]; thus properly considering and weighing all relevant factors.

**Ventura**, 975 A.2d at 1135 (emphasis added; citation omitted).

Instantly, the trial court explained it

> … was aware of the sentencing guidelines and considered the sentencing recommendations of both parties.  The court offered sufficient valid reasons for imposing the sentence it did.  First, the trial court had the benefit of and thoroughly reviewed the PSI and mental health reports, which was indicated on the record.  N.T.,

5/18/21, at 3-4. ***See Commonwealth v. Walls***, 926 A.2d 957 n.7 (Pa. 2007) (stating that when a PSI exists, it is "presume[ed] that the sentencing judge was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors."). Second, the trial court considered the victim's testimony and the severity of his injuries. N.T., 5/18/21, at 21-23. The trial court specifically stated: "… I've listened carefully to the testimony and evidence presented in this case and most importantly the testimony of the victim in this matter and that is a grave concern to me." ***Id.*** at 22. Finally, the trial court properly considered the deadly weapon enhancement for the attempted murder charge, as Appellant committed the crime of attempted murder using a deadly weapon. ***See*** 204 Pa. Code § 303.17(b).

The trial court clearly outlined its reasons for imposing Appellant's sentence, which expressed appropriate consideration for the protection of the public, the gravity of the offense, and the impact on the life of the victim, as well as Appellant's rehabilitative needs and mitigating factors. N.T., 5/18/21, at 21-23. ***See*** 42 Pa.C.S. § 9721(b). For all the aforementioned reasons, the trial court appropriately sentenced Appellant.

Trial Court Opinion, 5/25/22, at 13-14 (some capitalization modified).

The record supports the trial court's explanation. At sentencing, the court expressly stated it had "considered" and "reviewed" Appellant's PSI and his mental health report. N.T., 5/18/21, at 3-4. Thus, the record belies Appellant's claim that "the trial court did not indicate that it had considered [Appellant's PSI] and mental health report." Appellant's Brief at 11. Further, the trial court advised Appellant:

Mr. Joseph is lucky to be alive. You do have a prior conviction for aggravated assault also involving a firearm. I believe your behavior demonstrates that you are on a path that is getting worse. I'm going to sentence you within the guidelines.

N.T., 5/18/21, at 23.

- 19 -

In sum, we discern no abuse of the sentencing court's discretion. Contrary to Appellant's claim, his standard-guideline-range sentence is not unreasonable or excessive. *See Commonwealth v. Hill*, 210 A.3d 1104, 1117 (Pa. Super. 2019) (stating "where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code.") (citing *Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa. Super. 2010) (holding combination of PSI and standard-range sentence, absent more, cannot be considered excessive or unreasonable)); *see also Walls*, *supra* (stating rejection of a sentence on unreasonableness grounds should occur infrequently).

As there is no merit to Appellant's claims of error, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/8/2023

- 20 -