J-A05045-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
MANUEL M. ROSE :
:
Appellant : No. 1982 EDA 2022

Appeal from the PCRA Order Entered July 21, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008926-2013

BEFORE: DUBOW, J., KING, J., and LANE, J.

MEMORANDUM BY LANE, J.: **FILED MAY 20, 2024**

Manuel M. Rose ("Rose") appeals *pro se* from the order dismissing his first petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1] We affirm.

This Court previously summarized the relevant factual and procedural history as follows:

> At approximately 4:00 a.m. on May 21, 2013, Ralph Sheridan [("Sheridan")] was asleep on the couch of the first floor of Georgette Walton's [("Walton")] home at 3132 Tasker Street, Philadelphia, where he was renting a room. While Sheridan was sleeping, Rose forced his way into the home through the window by the couch. Once inside the house, Rose approached Sheridan and sat on top of him. As Sheridan awoke, he became aware that Rose was pushing the covers over his face and had placed a silver firearm against his head behind his left ear. Rose demanded that Sheridan give him all his "F-in money." N.T. Trial, 4/8/14, at 20. Sheridan pulled the covers away from his face and immediately recognized Rose, whom he knew as "Moe" since Sheridan was

---

[1] *See* 42 Pa.C.S.A. §§ 9541-9546.

friends with Rose's brother, Mack. An altercation between Sheridan and Rose followed, in which Sheridan grabbed for the gun and threw Rose off of him. Rose attempted to hit Sheridan with the gun, but Sheridan pushed Rose and ran out of the house. During the fight, Rose told Sheridan he would kill him if he called the police.

Sheridan ran to his next door neighbor's house and was allowed inside. His neighbor, Lawrence Smith [("Smith")], listened while Sheridan told him what had happened. While they were talking, Sheridan looked out Smith's window and saw Rose running up the street towards an alley. Smith also looked out his window and saw Walton's Cadillac being driven away by a man with a bald head. Smith told the police later that evening that he was 70% sure that the man he saw in the car was Rose.

Smith called Walton on the phone; she had remained asleep upstairs and did not know her house had been burglarized. She walked to her stairs and saw that her windows and front door were open. Immediately thereafter, at approximately 4:25 a.m., Walton sat on the steps and called 911 because she was too afraid to go downstairs. While she was on the 911 call, Walton looked outside through the open front door and confirmed that her 2006 Cadillac was missing. It was later learned that Sheridan's keys for the Cadillac were also missing from the house. When he fled from the house, Sheridan had left his set of the keys on the table near the couch where Rose had threatened him.

After she called the police, Walton spoke with Sheridan about what had happened. According to Walton, Sheridan told her that Rose broke in through the window, opened the door to let another individual, named Frizz, into the house, attacked Rose and then fled the scene. Walton then got dressed, walked downstairs to make sure nobody was in the house, and shut the door and the window where Rose had entered the house. When Walton closed the window, she noticed that the screen to the window was up and that the blinds to the windows had become disheveled.

After arriving on scene shortly thereafter, a police officer transported Walton and Sheridan to the police station where they were interviewed. Walton was interviewed by Detective Darnell Hobbs and Sheridan was interviewed by Detective John Frei. . . . Detective Frei interviewed Sheridan for approximately an hour . .

. [and] noticed that he was visibly shaken and nervous throughout the interview. Detective Frei showed [a] photo array prepared by Detective Hobbs to Sheridan; [and] he unequivocally identified Rose as the burglar. . . .

The next day, Walton received a phone call . . . notifying her that her car was . . . abandoned and parked on the street, with the keys inside. . . . Detective Hobbs lifted three fingerprints from the outside of the car. Fingerprint examiner Andrea Williams later concluded to a reasonable degree of scientific certainty that the fingerprint lifted from the passenger side front door of the car matched Rose's fingerprints. Sometime thereafter, Rose turned himself into the police and was arrested.

Prior to trial, Rose's preliminary hearing was scheduled on three separate occasions. Sheridan failed to appear at the first scheduled preliminary hearing because he had moved and failed to receive notice of the hearing. For the second preliminary hearing, however, Sheridan was notified but failed to appear because he was scared he would be harmed. Sheridan later testified at the third preliminary hearing. After the third preliminary hearing, Rose made a number of prison calls revealing, among other things, that he had worked with others to prevent Sheridan from testifying at the preliminary hearing and trial. Rose also admitted to his knowledge of and involvement in the burglary. At trial, the jury was provided with an agreed-upon transcript of the prison phone calls . . ..

Also at trial, the prosecutor broke the sequestration order that was in place for the witnesses of the incident. Specifically, Assistant District Attorney (["]ADA["]) Kevin Harden informed Sheridan that Walton had testified that two people had been present during the burglary, when Sheridan had always indicated to police that Rose was acting alone. Walton's testimony occurred on a Friday; ADA Harden immediately initiated an investigation of the second person, whom Walton knew as "Frizz," over the weekend. Through this investigation, Frizz was identified as ["]Dawu,["] a person mentioned in some of the prison phone calls Rose had made.

ADA Harden disclosed his violation of the sequestration order the following Monday. Rose moved for a mistrial, which the court denied. Instead, the court permitted Rose's counsel to have an overnight period of investigation regarding the revelation that

Frizz was present during the burglary. Defense counsel interviewed Sheridan during the investigation period, and Sheridan indicated that he had not wanted to reveal Frizz's identity because he was afraid for his life and did not want to testify against him. When trial resumed, Sheridan changed his testimony from his previous accounts of the burglary to indicate that two people, Rose and Frizz, had actually been present. In Sheridan's version of events, Frizz had not entered Walton's residence, but had been outside and had recovered the gun from Rose when he fled the scene.

On April 16, 2014, the jury convicted Rose of burglary and simple assault. The court sentenced Rose on August 14, 2014, to 25 to 50 years' imprisonment because his burglary conviction had a 25-year mandatory minimum as a "third strike" conviction for a crime of violence. *See* 42 Pa.C.S.[A.] § 9714. [This Court affirmed the judgment of sentence and our Supreme Court denied allowance of appeal.]

*Commonwealth v. Rose*, 172 A.3d 1121, 1124-26 (Pa. Super. 2017), *appeal denied*, 186 A.3d 369 (Pa. 2018). Rose petitioned our Supreme Court for reconsideration, which was denied on August 1, 2018. *See* Order, 8/1/18, at 1.

On September 16, 2019, Rose filed a timely *pro se* PCRA petition.[2] The PCRA court appointed counsel who filed an amended petition raising ten

_____

[2] After our Supreme Court denied reconsideration, Rose had ninety days in which to file a petition for *certiorari* in the United States Supreme Court. *See* U.S. Sup. Ct. R. 13. As Rose opted not to do so, his judgment of sentence became final on October 30, 2018. *See* 42 Pa.C.S.A. § 9545(b)(3) (providing that a judgment of sentence becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of Pennsylvania and the United State Supreme Court, or upon the expiration of time for seeking such review). Rose had one year from that date, or until October 30, 2019, to file a timely PCRA petition. *See* 42 Pa.C.S.A. § 9545(b)(1) (providing that any petition shall be filed within one year of the date the judgment becomes final). Thus, Rose's petition, filed on September 16, 2019, was timely filed.

claims, including claims that Rose's sentence for burglary was illegal and that trial and appellate counsel had been ineffective. Rose thereafter filed a first supplemental memorandum of law to the amended petition. Rose then filed a second supplemental memorandum of law to the amended petition wherein he raised an additional claim that the evidence was insufficient to support his convictions.

The Commonwealth filed a motion to dismiss the amended petition. Rose filed a response in opposition to the Commonwealth's motion to dismiss. The PCRA court issued notice of its intent to dismiss the petition without a hearing pursuant to Pa.R.Crim.P. 907. In response, Rose filed a fourth supplemental response in which he discussed four claims of infectiveness by trial counsel, as well as a due process violation. Rose then filed a fifth supplemental response wherein he discussed several more due process violations, a **Brady**[3] violation, prosecutorial misconduct, and trial counsel's ineffectiveness. Rose filed a sixth supplemental response in which he discussed a hearsay violation and several instances of ineffectiveness by trial counsel. Rose filed a seventh supplemental response in which he noted that the PCRA court's Rule 907 notice did not address Rose's various due process issues. Rose filed a second sixth supplemental response in which he expanded

---

[3] **See Brady v. Maryland**, 373 U.S. 83 (1963).

on a prior discussion of trial counsel's ineffectiveness. On July 12, 2022, the PCRA court entered an order dismissing the petition.

Rose filed a counseled timely notice of appeal. The PCRA court directed Rose to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). In response, counsel filed a concise statement. Rose thereafter filed a *pro se* concise statement.[4]

In this Court, Rose filed two petitions to proceed *pro se*. This Court remanded the matter to the PCRA court for a hearing pursuant to **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998), to determine whether Rose's waiver of counsel for purposes of this appeal was knowing, intelligent, and voluntary. After conducting a **Grazier** hearing, the PCRA court granted Rose's request to proceed *pro se* in this appeal.[5] At the **Grazier** hearing, Rose requested leave to file an amended *pro se* concise statement, which request was granted. Rose thereafter filed a *pro se* amended concise statement in which he raised eleven issues. The PCRA court authored a Rule 1925(a) opinion in which it determined that several of the issues raised in Rose's *pro se* amended concise statement were waived either because they were not

---

[4] As Rose was represented by counsel, this filing was a legal nullity. **See Commonwealth v. Williams**, 151 A.3d 621, 623 (Pa. Super. 2016) (holding that, because hybrid representation is not permitted in this Commonwealth, our courts will not accept a *pro se* filing while an appellant is represented by counsel; indeed, a *pro se* filing has no legal effect and, therefore, is a legal nullity).

[5] The PCRA court also granted counsel leave to withdraw from representation.

raised in the counseled amended petition, or they were raised for the first time in the *pro se* amended concise statement.

Rose raises the following issues for our review:

1. DID THE P.C.R.A. COURT ERR AND ABUSE ITS DISCRETION BY FAILING TO REVIEW . . . ROSE'S CLAIM THAT HIS 14TH AMENDMENT RIGHT TO DUE PROCESS WAS VIOLATED WHERE THE EVIDENCE WAS INSUFFICINT OF A MATTER OF LAW TO SUSTAIN . . . ROSE'S CONVICTION BEYOND A REASONABLE DOUBT?

2. WAS TRIAL COUNSEL RENDERED INEFFECTIVE FOR NOT OBJECTING TO THE HEARSAY TESTIMONY OF . . . WALTON WHERE [SHE] HAD NO PERSONAL KNOWLEDGE OF THE ALLEGED INCIDENT THAT SHE TESTIFIEDT ABOUT?

3. DID THE TRIAL COURT ERR AND ABUSE ITS DISCRETION BY ALLOWING THE COMMONWEALTH TO PLACE A SPECIAL VERDICT QUESTION ON THE VERDICT FORM ASKING THE JURY TO DETERMINE BEYOND A REASONABLE DOUBT THAT [ROSE] POSSESSED A FIREARM THAT PLACED VICTIM IN FEAR OF SERIOUS BODILY INJURY OR DEATH, WHICH DEFINED THE OFFENSE OF BURGLARY TO AN AGGRAVATED CRIME WHERE NO STATUTORY AUTHORIZATION EXISTED VIOLATING ***ALLEYNE V. UNITED STATES***, [570 U.S. 99 (2013)]?

4. WAS . . . P.C.R.A. COUNSEL . . . INEFFECTIVE BY FILING SUPPLEMENTAL RESPONSES OF NEW ARGUMENTS RESPONSE [*sic*] TO THE COURT'S RULE 907 NOTICE OF DISMISSAL WITHOUT FULFILLING THE REQUIREMENT OF PA.R.CRIM.P. 905(A) SEEKING TO LEAVE OF THE COURT TO AMEND . . . ROSE'S P.C.R.A. PETITION WHERE . . . ISSUES WERE DEEMED WAIVED BY THE P.C.R.A. COURT?

Rose's Brief at 4-6 (capitalization in original).

Our standard of review of an order dismissing a PCRA petition is well-settled:

We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level.

This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. This Court may affirm a PCRA court's decision on any grounds if the record supports it. Further, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review plenary.

*Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa. Super. 2012) (citations omitted).

In his first issue, Rose challenges the PCRA court's dismissal of his petition without reviewing his challenge to the sufficiency of the evidence supporting his conviction for simple assault. Initially, we note that Rose's first issue was not raised before the PCRA court in his counseled amended petition. *See Commonwealth v. Reid*, 99 A.3d 470, 494 (Pa. 2014) (holding that claims not raised in a PCRA petition cannot be raised for the first time on appeal and are indisputably waived); *see also* Pa.R.A.P. 302(a) (providing that issues not raised in the lower court are waived and cannot be raised for this first time on appeal). More importantly, however, Rose's sufficiency challenge presents a claim which is not cognizable under the PCRA. *See Commonwealth v. Price*, 876 A.2d 988, 995 (Pa. Super. 2005) (rejecting a sufficiency claim raised on PCRA appeal because such a claim is not cognizable under the PCRA). Accordingly, Rose's first issue merits no relief.

In his second issue, Rose challenges the PCRA court's dismissal of his claim that trial counsel was ineffective for failing to object to the hearsay

testimony recounted by Walton at trial. Our standard of review of an ineffectiveness claim is well-settled:

> To prevail on a claim of ineffective assistance of counsel, a PCRA petitioner must satisfy the performance and prejudice test set forth by the United States Supreme Court in **Strickland v. Washington**, 466 U.S. 668, 687 . . . (1984). . . . Accordingly, to prove that counsel was ineffective, the petitioner must demonstrate: (1) that the underlying claim has arguable merit; (2) that no reasonable basis existed for counsel's actions or failure to act; and (3) that the petitioner suffered prejudice as a result of counsel's error. To prove that counsel's chosen strategy lacked a reasonable basis, a petitioner must prove that an alternative not chosen offered a potential for success substantially greater than the course actually pursued. Regarding the prejudice prong, a petitioner must demonstrate that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction. Counsel is presumed to be effective; accordingly, to succeed on a claim of ineffectiveness the petitioner must advance sufficient evidence to overcome this presumption.
>
> We need not analyze the prongs of an ineffectiveness claim in any particular order. Rather, we may discuss first any prong that an appellant cannot satisfy under the prevailing law and the applicable facts and circumstances of the case. Finally, counsel cannot be deemed ineffective for failing to raise a meritless claim.

**Commonwealth v. Johnson**, 139 A.3d 1257, 1272 (Pa. 2016) (some citations and quotation marks omitted).

Hearsay is an out of court statement introduced for the truth of the matter asserted. **See Commonwealth v. Fitzpatrick**, 255 A.3d 452, 458 (Pa. 2021). While hearsay statements are generally inadmissible, a party may present otherwise inadmissible hearsay under the excited utterance exception provided by Pennsylvania Rule of Evidence 803, which defines an excited utterance as "[a] statement relating to a startling event or condition, made

while the declarant was under the stress of excitement that it caused." Pa.R.E. 803(2). This Court has explained:

> The declaration need not be strictly contemporaneous with the existing cause, nor is there a definite and fixed time limit. Rather, each case must be judged on its own facts, and a lapse of time of several hours has not negated the characterization of a statement as an "excited utterance." The crucial question, regardless of the time lapse, is whether, at the time the statement is made, the nervous excitement continues to dominate while the reflective processes remain in abeyance.

*Commonwealth v. Gore*, 396 A.2d 1302, 1305 (Pa. Super. 1978) (citations omitted).

Rose contends that his trial counsel was ineffective for failing to object to Walton's testimony regarding what Sheridan told her about the burglary, including that it was Rose who committed the burglary. Rose maintains that Walton's testimony regarding Sheridan's statements to her constituted inadmissible hearsay which was not subject to any hearsay exception. Although Rose concedes that Walton's testimony was admitted by the trial court under the excited utterance exception to the hearsay rule, he claims that "the Commonwealth cannot say when this utterance occurred." Rose's Brief at 21. Rose argues that, because the hearsay testimony was offered for the truth of the matter asserted, it identified him as the perpetrator of the burglary. Rose asserts that his trial counsel had no reasonable basis for failing to object to the hearsay testimony, and he suffered prejudice as a result of counsel's failure.

The PCRA court considered Rose's second issue and determined that it lacked merit. The court reasoned:

> Here, [Rose's] claim that trial counsel was ineffective for failing to raise a hearsay objection is meritless because the statements at issue are admissible as excited utterances, a hearsay exception.
>
> The testimony offered by . . . Walton as to the statements of . . . Sheridan would be admissible under the excited utterance exception, as . . . Sheridan was under the stress of having just experienced the burglary. The applicability of the excited utterance exception to hearsay is not based on a set time interval.
>
> * * * *
>
> In the testimony at issue, . . . Walton is recalling what . . . Sheridan said to her during a phone call. Though it is not exactly clear when the phone call occurred, it was the same night as the burglary. Even after the phone call, the record reflects that . . . Sheridan was still under the stress and excitement from the event. Indeed, when . . . Walton first saw . . . Sheridan after the phone call, she described . . . Sheridan as "disheveled, scared to death. Like he almost died, because like he was in total shock." Based on this testimony from . . . Walton, undoubtedly, . . . Sheridan was experiencing great stress after the burglary. Therefore, . . . Walton's testimony regarding . . . Sheridan's phone call is admissible as an exited utterance and counsel cannot be ineffective for failing to object to a meritless claim.

PCRA Court Opinion, 3/27/23, at 11-12 (citations and unnecessary capitalization omitted).

Based on our review, we conclude that the PCRA court's determinations are supported by the record and free from legal error. Sheridan's statements to Walton during their phone conversation related to a startling event; namely, a burglary and assault wherein Sheridan, who had been asleep in his residence, was attacked by a man with a firearm. Even if the statement was

- 11 -

made to Sheridan sometime after the burglary, the record reflects that it was nonetheless made while Sheridan was still under the stress caused by the burglary and assault. Indeed, Walton observed that, when she encountered Sheridan **after** the phone call, he appeared "scared to death," as if he was "in total shock." N.T., 4/4/14, at 53; **see also Rose**, 172 A.3d at 1125 (indicating that, after Sheridan called Walton, Detective Frei interviewed Sheridan for approximately an hour and noticed that he was visibly shaken and nervous throughout the interview). Thus, the record supports the PCRA court's determination that Sheridan's statements to Walton were made while he was under the stress of the burglary and assault and were therefore admissible under the excited utterance exception to the hearsay rule.[6] Thus, as trial counsel cannot be deemed ineffective for failing to raise a meritless claim, Rose's second issue merits no relief.

In his third issue, Rose challenges the legality of his sentence based on the trial court's use of a special verdict form. Rose's amended petition included a challenge to the trial court's use of a special verdict form in the

---

[6] The PCRA court additionally determined that, even if Walton's testimony did not fall under the excited utterance exception, trial counsel's failure to object to the testimony constituted a harmless error because Sheridan's independent trial testimony contained the same information, albeit in much greater detail. **See** PCRA Court Opinion, 3/27/23, at 13-14. Our review of the record confirms that Sheridan independently identified Rose as the burglar and his attacker. **See** N.T., 4/8/14, at 19-52.

wake of **Alleyne**;[7] however, the amended petition challenged only the first question on the verdict form—pertaining to whether a person was present at the time of the burglary. **See** Amended Petition, 3/25/21, at 3-12. Rose did not raise any challenge pertaining to the second question on the special verdict form—pertaining to whether he visibly possessed a firearm at the time of the burglary. **See id**. Although illegal sentencing issues cannot be waived, they still must be presented in a timely-filed PCRA petition. **See Commonwealth v. Taylor**, 65 A.3d 462, 465 (Pa. Super. 2013). While Rose failed to raise any legality of sentencing challenge to the second question on the special verdict form in his amended petition, it is not subject to waiver because this Court has jurisdiction to consider it based on the timeliness of the petition. **See Commonwealth v. Berry**, 877 A.2d 479, 482 (Pa. Super. 2005) (*en banc*) (holding that "a court may entertain a challenge to the legality of the sentence so long as the court has jurisdiction to hear the claim. In the PCRA context, jurisdiction is tied to the filing of a timely PCRA petition"); **see also Commonwealth v. Moore**, 247 A.3d 990, 997 (Pa. 2021) (holding that a claim that a petitioner is serving an illegal sentence exceeding the lawful maximum, including an **Alleyne** challenge, is cognizable under the PCRA).

---

[7] Pursuant to **Alleyne**, any fact that increases the penalty for a crime is an element that must be submitted to the jury and found beyond a reasonable doubt. **See Alleyne**, 570 U.S. at 103.

- 13 -

Accordingly, as Rose's PCRA petition was timely filed, we may address the issue.

A sentencing court is required to impose a minimum prison sentence of at least twenty-five years where a defendant has been convicted of two or more "crimes of violence." 42 Pa.C.S.A. § 9714(a)(2). The term "crime of violence" is defined in the statute as including, *inter alia*, rape, sexual assault, and certain types of burglaries. 42 Pa.C.S.A. § 9714(g). A burglary committed pursuant to 18 Pa.C.S.A. § 3502(a)(1) is considered a crime of violence. **See id**.

Notably, under the Crimes Code, there are different types of burglary. **See** 18 Pa.C.S.A. § 3502(a)(1)-(4). In all types of burglary, a person commits the offense if, with the intent to commit a crime therein, the person enters a building or occupied structure, or separately secured or occupied portion thereof. **See id**. The variations of the crime of burglary depend on whether: a person is present; the structure has been adapted for overnight accommodations; or the person committing the burglary also commits, attempts, or threatens to commit a bodily injury crime. **See id**.

Pursuant to section 3502(a)(1), a person commits the offense of burglary if, with the intent to commit a crime therein the person:

> (i) enters a building or occupied structure, or separately secured or occupied portion thereof, that is adapted for overnight accommodations **in which at the time of the offense any person is present** and **the person commits, attempts or threatens to commit a bodily injury crime therein**; [or]

- 14 -

> (ii) enters a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations in which at the time of the offense any person is present[.]

18 Pa.C.S.A. § 3502(a)(1) (emphasis added). None of the remaining types of burglary involve the commission, attempt, or threat to commit a bodily injury crime, and certain of the other types of burglary do not involve the presence of any person during the crime. *See id*. § 3502(a)(2)-(4).

Rose contends that the trial court's use of the special verdict form to satisfy the criteria of *Alleyne* for imposing a mandatory minimum sentence was impermissible. Rose claims that the Commonwealth used the affirmative answers to the questions as if the jury rendered a guilty verdict. Rose points out that, when charging the jury, the trial court did not instruct the jury that it needed to find that a person was present beyond a reasonable doubt. According to Rose, a mandatory penalty under section 9714 was inappropriate because the jury was not instructed on an element necessary to aggravate the offense. Rose points to the trial court's instruction to the jurors that, if they found Rose guilty of burglary, they needed to answer the additional question of whether they found beyond a reasonable doubt that Rose visibly possessed a firearm which placed Sheridan in reasonable fear of death or serious bodily injury by having the jury foreperson circle "yes" or "no" on the verdict form. Rose posits that "[a]n open[-]ended multiple choice question does not meet the standard of guilt beyond a reasonable doubt." Rose's Brief

at 28. Rose maintains that this question created a new aggravated offense where there is no statutory authority.

The PCRA court addressed Rose's third issue and determined that it lacked merit. The court reasoned:

> . . . Here, this court issued a bifurcated instruction for the charge of burglary to the jury. This court stated:
>
>> Then the next charge listed is burglary on the left-hand side. On the right-hand side, the foreperson would record the verdict [for burglary as] guilty or not guilty. If the verdict is guilty, then there are two questions to answer . . . The first question listed is: If guilty do you find beyond a reasonable doubt that a person was present at the time of burglary? . . . The next question the jury is to answer, again if find the jury finds the defendant guilty of burglary . . . Do you find beyond a reasonable doubt that defendant visibly possessed a firearm or a replica of a firearm that placed the victim in reasonable fear of death or serious bodily injury during the commission of the robbery?
>
> N.T. [4/11/]14, at 219-[]20. . . .

PCRA Court Opinion, 3/27/23, at 15-16 (quotation marks and unnecessary capitalization omitted).

Based on our review, we conclude that the trial court's use of a special verdict form did not implicate *Alleyne* or render Rose's sentence illegal. Given that the two questions posed on the special verdict sheet involved statutory elements of the crime of burglary and were intended to determine the precise type of burglary that Rose committed under section 3502(a), they did not

implicate **Alleyne** or operate to create a new or enhanced crime.[8]  The presence of a person in a burglarized structure and the attempt or threat to commit a bodily injury crime are simply elements of the crime of burglary itself, and are not facts which would increase the penalty for burglary once convicted.  Thus, the trial court's use of the special verdict form to determine the type of burglary committed by Rose did not implicate **Alleyne**.

Moreover, **Alleyne** was not implicated by section 9714 because the increased penalties provided by that statute are based on prior convictions. **See Commonwealth v. Reid**, 117 A.3d 777, 784-85 (Pa. Super. 2015) (holding **Alleyne** is not implicated by section 9714 because its ruling did not overturn established precedent that prior convictions are sentencing factors and not elements of offenses, and section 9714 increases mandatory minimum sentences based on prior convictions).  Accordingly, Rose's third issue merits no relief.

In his fourth issue, Rose presents a new claim raised for the first time on appeal that PCRA counsel was ineffective.  Pursuant to **Commonwealth v. Bradley**, 261 A.3d 381 (Pa. 2021), a defendant may raise claims of ineffective assistance of PCRA counsel for the first time during an appeal from

---

[8] The criminal complaint charged Rose with burglary as a first-degree felony under section 3502, which implicated subsections 3502(a)(1)(i), (ii), and (3). **See** Criminal Complaint, 5/21/13, at 1.  Moreover, Rose was on notice that the Commonwealth would seek to prove the presence of another person because the criminal complaint specifically alleged that Walton was present at the time of the burglary.  **See id**.

the dismissal of a timely filed first PCRA petition where the PCRA counsel in question represented the defendant until the appeal. *See id*. at 401-05. The *Bradley* Court recognized that, in such cases, remand may sometimes be necessary:

> In some instances, the record before the appellate court will be sufficient to allow for disposition of any newly-raised ineffectiveness claims. However, in other cases, the appellate court may need to remand to the PCRA court for further development of the record and for the PCRA court to consider such claims as an initial matter. Consistent with our prior case law, to advance a request for remand, a petition would be required to provide more than mere boilerplate assertions of PCRA counsel's ineffectiveness; however, where there are material facts at issue concerning claims challenging counsel's stewardship and relief is not plainly unavailable as a matter of law, the remand should be afforded.

*Id*. at 402 (citations and quotation marks omitted). Thus, appellate courts have the ability to grant or deny relief on straightforward claims, as well as the power to remand to the PCRA court for the development of the record. *See id*. at 403.

Here, Rose adequately raised and preserved his claims regarding the ineffective assistance of PCRA counsel by raising those claims at the first opportunity to do so; specifically, in his brief filed with this Court in this appeal. For this reason, we conclude that Rose raised these claims at the first opportunity to do so, and that, pursuant to *Bradley*, they have not been waived.

Rose claims that PCRA counsel was ineffective for filing multiple responses to the Rule 907 notice in which he identified new issues without

seeking leave to amend the petition to include those issues. For purposes of review, issues not included in an original PCRA petition or a court-approved amended PCRA petition are deemed waived. *See Commonwealth v. Ousley*, 21 A.3d 1238, 1242 (Pa. Super. 2011) (holding that issues not raised in a PCRA petition cannot be considered on appeal). The purpose behind a Rule 907 notice is to allow a petitioner an opportunity to seek leave to amend his petition and correct any material defects. *See Commonwealth v. Williams*, 782 A.2d 517, 526 (Pa. 2001). A response to a Rule 907 notice is not itself a petition, and the law still requires leave of court to submit an amended petition. *See* Pa.R.Crim.P. 905(A); *see also Commonwealth v. Rykard*, 55 A.3d 1177, 1189 (Pa. Super. 2012) (holding that, when a petitioner has not sought permission to amend a petition to raise new claims, the PCRA court is not required to address the issues raised in response to a Rule 907 notice).

Rose claims that PCRA counsel's ineffectiveness in failing to seek leave to amend the petition resulted in the waiver of the following issues:

A. WAS TRIAL COUNSEL INEFFECTIVE FOR NOT INVESTIGATING THE CRIME, INTERVIEWING THE WITNESSES, AND ADVISING [ROSE] NO [*sic*] TO TESTIFY BECAUSE THE COMMONWEALTH DID NOT PROVE THEIR CASE?

B. WAS TRIAL COUNSEL INEFFECTIVE FOR NOT MOTIONING THE COURT TO DETERMINE IF [ROSE'S] PRIOR CONVICTIONS WERE CRIMES OF VIOLENCE ACCORDING TO § 9714 "VIOLENT CRIME STATUTE" WHERE COMMONWEALTH NEVER PROSECUTED [ROSE] UNDER THIS STATUE [*sic*]?

C. WAS APPELLANT [*sic*] COUNSEL INEFFECTIVE FOR FAILING TO RAISE ON APPEAL PROSECUTORIAL MISCONDUCT WHERE THE PROSECUOTR [*sic*] TESTIFIED THAT [ROSE] HAD A CRIMINAL NUMBER WHEN REFERENCING A POLICE PHOTO WHICH HAD BEEN PUBLISHED TO THE JURY AND PLACING IN THE MIND OF THE JUROR'S [*sic*] THAT . . . ROSE HAD PRIOR CRIMINAL ACTIVITY VIOLATING FEDERAL AND STATE CONSTITUTIONAL RIGHTS?

D. WAS IT PROSECUTORIAL MISCONDUCT WHEN THE PROSECUTOR WITHHELD EXCULPATORY EVIDENCE WHICH WOULD HAVE SHOWN THAT SOMEONE ELSE OTHER THAT [*sic*] . . . ROSE COMMITTED THE CRIME AND MISREPRESENTED THE FACTS TO THE COURT TO COVER THIS FACT UP VIOLATING FEDERAL AND STATE CONSTITUTIONAL RIGHTS.

E. DID THE TRIAL COURT ERR AND ABUSE ITS DISCRETION BY NOT ORDERING AN EVIDENTIATY [*sic*] HEARING FOR INEFFECTIVENESS OF TRIAL COUNSEL FOR NOT CHALLENGING THE SUFFICIENCY OF THE EVIDENCE WHERE APPELLANT [*sic*] ATTORNEY WAS FROM THE SAME PUBLIC DEFENDER'S OFFICE AND COULD NOT RAISE THE ISSUE ON APPEAL, [ROSE] HAS A RIGHT TO CONFLICT FREE COUNSEL AND THIS WOULD BE THE FIRST OPPORTUNITY FOR THIS CLAIM TO BE RAISED[.]

F. WAS APPELLANT [*sic*] COUNSEL INEFFECTIVE FOR NOT RAISING THE TRIAL COURT'S ERROR AND ABUSE OF DISCRETION BY GIVING A CONSCIOUSNESS OF GUILT INSTRUCTION TO THE JURY AND ADMITTING DEATH THREAT TESTIMONY THAT WAS INADMISSIBLE AND PREJUDICIAL AND NO EVIDENCE WAS PRODUCED THAT CONNECTED THESE THREATS TO . . . ROSE?

G. WAS TRIAL COUNSEL INEFFECTIVE FOR NOT OBJECTING TO THE IMPROPER AND PREJUDICIAL STATEMENTS MADE BY THE PROSECUTOR IN HIS OPENING ARGUMENT THAT . . . ROSE WAS A "ROBBING PEOPLE IN THE NEIGHBORHOOD["] AND THAT [HE] WAS A "BULLY" WHERE THERE WAS NO EVIDENCE PRESENTED TO SUBSTANTIATE THESE CLAIMS WHICH WERE PREJUDICIAL AND PLACED IN THE MINDS OF THE JURY THAT . . . ROSE WAS A KNOWN CRIMINAL?

Rose's Brief at 5-6 (capitalization in original, issues reordered for ease of disposition).

Initially, we observe that issues A and B were not raised in any counseled response to the Rule 907 notice. Thus, these two issues were not waived due to PCRA counsel's failure to seek leave to amend the petition. Rather, they were deemed waived by the PCRA court because they were raised for the first time in Rose's *pro se* amended concise statement. **See** PCRA Court Opinion, 3/27/23, at 14-15, 17; **see also** Pa.R.A.P. 302(a). Accordingly, Rose's claims of PCRA counsel's ineffectiveness in issues A and B merit no relief.

With respect to issue C, Rose claims that PCRA counsel was ineffective for failing to seek leave to amend the petition to include a claim that trial counsel was ineffective for failing to object to the prosecutor's introduction of photographs of Rose which informed the jury of his prior arrests. Our review of the amended petition reveals that PCRA counsel raised this issue in the amended petition. **See** Amended Petition, 3/25/21, at 23-24. Moreover, the PCRA court expressly stated in its Rule 907 notice that counsel had raised "broad claims that both trial and appellate counsel were ineffective for failing to object to the admission of [Rose's] photograph at trial." Rule 907 Notice, 2/16/22, at unnumbered 2, 5. Thus, as PCRA counsel included the issue in the amended petition, he cannot be deemed ineffective for failing to seek leave

to amend the petition to add a claim already included therein. Accordingly, Rose's claim of PCRA counsel's ineffectiveness at issue C merits no relief.

With respect to issues D through G, these issues were not raised in the amended petition and were instead raised for the first time by PCRA counsel in his various responses to the Rule 907 notice. As explained above, to prevail on a claim of ineffective assistance of counsel, a PCRA petitioner must demonstrate: (1) that the underlying claim has arguable merit; (2) that no reasonable basis existed for counsel's actions or failure to act; and (3) that the petitioner suffered prejudice as a result of counsel's error. *See Johnson*, 139 A.3d at 1272. Regarding the prejudice prong, a petitioner must demonstrate that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction. *See id*. Counsel cannot be deemed ineffective for failing to seek leave to amend Rose's petition to add a meritless claim. *See id*.

In issue D, Rose claims that PCRA counsel was ineffective for failing to seek leave to amend the petition to include a claim of prosecutorial misconduct based on Rose's belief that the Commonwealth knew in advance of Watson's testimony that Frizz was present during the burglary and assault. Notably, a claim of prosecutorial misconduct is not cognizable under the PCRA. *See Commonwealth v. Wholaver*, 177 A.3d 136, 174 (Pa. 2018) (holding that petitioner's PCRA claim regarding the prosecutor's alleged misconduct was waived because it took place during trial and therefore could have been, but

was not, raised at trial): *see also* 42 Pa.C.S.A. § 9543(a)(3) (providing that to be eligible for post-conviction relief, a petitioner must plead and prove that his claim has not been previously litigated or waived); *Id*. § 9544(b) (providing that "an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding"). Accordingly, PCRA counsel cannot be regarded as ineffective for failing to seek leave to add a claim which is not cognizable under the PCRA. *See Johnson*, 139 A.3d at 1272. Accordingly, Rose's claim of PCRA counsel's ineffectiveness in issue D merits no relief.

In issues E through F, Rose claims that PCRA counsel was ineffective for failing to seek leave to amend the petition to add claims of ineffectiveness by trial counsel and appellate counsel. Where a petitioner alleges multiple layers of ineffectiveness, he is required to plead and prove, by a preponderance of the evidence, each of the three prongs of ineffectiveness relevant to each layer of representation. *See Commonwealth v. Parrish*, 273 A.3d 989, 1004 n.11 (Pa. 2022). Specifically, our Supreme Court has explained:

> To be eligible for relief on [layered claims of ineffective assistance of counsel, a petitioner] must plead and prove that: (1) trial counsel was ineffective for a certain action or failure to act; and (2) [subsequent] counsel was ineffective for failing to raise trial counsel's ineffectiveness. *As to each relevant layer of representation, [a petitioner] must meet all three prongs of the . . . test for ineffectiveness*. A failure to satisfy any of the three prongs of the . . . test requires rejection of a claim of ineffective assistance of trial counsel, which, in turn, requires rejection of a layered claim of ineffective assistance of [subsequent] counsel.

- 23 -

Thus, if the petitioner cannot prove the underlying claim of trial counsel ineffectiveness, then petitioner's derivative claim of [subsequent] counsel ineffectiveness of necessity must fail, and it is not necessary for the court to address the other two prongs of the . . . test [*i.e.*, the reasonable basis and prejudice prongs] as applied to [subsequent] counsel.

***Commonwealth v. Chmiel***, 30 A.3d 1111, 1128 (Pa. 2011) (citations omitted and formatting altered, emphasis added).

In his appellate brief, Rose alleges multiple layers of ineffectiveness, concluding that PCRA counsel was ineffective for not raising a claim of ineffectiveness by trial or appellate counsel in issues E through G. However, whereas Rose endeavors to make out an ineffectiveness claim for trial or appellate counsel in these three claims, he failed to plead or prove, let alone discuss, the three prongs of the ineffectiveness test with respect to PCRA counsel. As Rose failed to present any argument as to the reasonable basis and prejudice prongs regarding PCRA counsel's stewardship for these claims, his layered ineffectiveness claims fail because he has not developed his assertions of PCRA counsel's ineffectiveness beyond bald allegations. ***See Bradley***, 261 A.3d at 402; ***see also Parrish***, 273 A.3d at 1004 n.11. Accordingly, we conclude that Rose failed to plead a sufficient layered claim of PCRA counsel's ineffectiveness, and furthermore failed to show that a remand is necessary for further review of his undeveloped claims. ***See Parrish***, 273 A.3d at 1002.

Therefore, as Rose is not entitled to relief on any of his claims, we affirm the order dismissing his petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/20/2024